■ WILLIAMSON, PICKET, GROSS, INC., Respondent, v 400 PARK AVENUE COMPANY, Appellant, et al., Defendant.—Order, Supreme Court, New York County, entered October 6, 1977, denying defendant 400 Park Avenue's motion to dismiss for failure to state a cause of action under CPLR 3211 (subd [a], par 7), is reversed, on the law, without costs and disbursements, and said motion is granted, the complaint dismissed and the action severed as to defendant-appellant. Defendant Irving Trust Co. was a tenant in a building owned by defendant 400 Park Avenue under a lease which permitted Irving to assign, without the landlord's permission, or sublet to a well-established organization (insurance company, bank, trust company, title company) which had at the time of subletting a combined capital and surplus of no less than $50,000,000. Irving told plaintiff, a real estate broker, of its plans to sublet and plaintiff advised that Banco di Napoli was interested, and negotiations between the two principals began. 400 Park was approached by plaintiff about a direct lease to Banco, but the discussions were not successful. 400 Park was dissatisfied with the possible Irving-Banco lease and stated that it wanted Security National Bank in the Irving space. 400 Park then began a lawsuit against Irving and Banco to enjoin the sublease and asked for damages and declaratory relief. The suit was based on an alleged agreement wherein Irving agreed to cancel the Irving-400 Park lease, when actually Irving could sublet without the consent of 400 Park. Banco di Napoli eventually backed away from the agreement and 400 Park withdrew its suit. Special Term found a tortious interference with a brokerage agreement because 400 Park knew of the brokerage agreement; began an action based upon a fiction; intended to prevent a lease so it could get a more favorable lease with another; and that the plaintiff would have been entitled to commission but for 400's unlawful conduct. Interference with precontractual relations is actionable when a contract would have been entered into had it not been for the malicious conduct of a third person. It is sufficient to show that negotiations were reasonably certain to result in a contract advantageous to the plaintiff. (45 AM Jur 2d, Interference, § 40.) The seminal case of *Union Car Adv. Co. v Collier* (263 NY 386) gives as the general rule that an action will lie for interference in favor of one who would have received a contract but for the malicious, fraudulent, and deceitful acts of a third party. *Benton v Kennedy-Van Saun Mfg. & Eng. Corp.* (2 AD2d 27, 29) spells out interference citing *Campbell v Gates* (236 NY 457, 460), as " 'It is a wrongful act, done intentionally, without just cause or excuse, and from this a malicious motive is to be inferred. This does not necessarily mean actual malice or ill-will * * * The action is predicated not on the intent to injure, but on the intentional interference, without justification, with A's contractual rights, with knowledge thereof. It is a legal wrong and one who commits it, if damage be sustained, must answer therefor.' [citing *Campbell*] Self-interest may be the legal justification which negatives intent to injure, but of course it cannot afford legal justification for the intent to interfere with a contract by unlawful means." It is undisputed that a lawsuit may be the basis for a claim of interference *(Muller v Star*

*Supermarkets,* 49 AD2d 696), and plaintiff characterizes 400 Park's institution of suit, allegedly without cause, as sufficient to support a cause of action for interference with its brokerage agreement with Irving. Although 400 Park knew of the brokerage agreement, plaintiff's standing to sue is brought into serious contention. If there was actionable interference it was directed against the proposed sublease, not the brokerage agreement. This court knows of no precedent that would extend this tort theory to cover claims of a stranger to the contract interfered with. Plaintiff complains that 400 Park was motivated by a desire to benefit from a lease of substantially more space to another bank. This would appear to be sound economic policy when dealing with one's own property, or as stated in *Reinforce, Inc. v Birney* (308 NY 164, 169) "If the doers, by means not in themselves unlawful, of acts not in themselves unlawful, have any proper purpose to serve, they are not liable for the damage they cause". The act of the defendant in bringing the suit was not unlawful and the defendant's desire to so dispose of his property to his own advantage not being inherently malicious, fraudulent or motivated by a desire to damage the plaintiff, he thus had a proper purpose to serve. "In general, it may be said that any purpose sufficient to create a privilege to disturb existing contractual relations such as the * * * protection of the interests of * * * the defendants own property or business interests * * * will also justify interference with relations which are merely prospective." (Prosser, Torts [4th ed], ch 25, § 130, p 954.) Concur—Kupferman, J. P., Evans and Sullivan, JJ.; Fein and Lane, JJ., dissent in a memorandum by Lane, J., as follows: Irving Trust Company (Irving) was the lessee of premises owned by 400 Park Avenue Company (Park Avenue). The lease terms permitted Irving to assign or sublet the premises *without* the landlord's consent to "a well-established organization such as an insurance, banking, trust or title company," provided that at the time of subletting the proposed tenant had a combined capital and surplus of not less than $50,000,000. The lease also contained two 10-year renewal options. Francis Waldron, an officer of Irving, met with a Mr. Gross of Williamson, Picket, Gross, Inc. (WPG), a broker. Gross was told by the Irving representative that Irving wanted to sublet and that Banco di Napoli (Banco) was interested in the space. The terms of a sublease between Irving and Banco were worked out by WPG and, when the terms were fully agreed upon, Waldron sent a letter to Park Avenue advising it of Irving's intent to sublease. Larry Fisher of Park Avenue preferred leasing to another corporation and threatened to sue Irving if it went through with the Banco sublease. In fact, Park Avenue brought suit to enjoin the Irving-to-Banco sublease alleging that there was an "agreement" between Irving and Park Avenue providing that, if Park Avenue found an acceptable tenant, Irving would cancel the lease. This "agreement" was denied by Irving. However, the net effect of Park Avenue's lawsuit was to cause Banco to withdraw from the proposed sublease and WPG thereby lost its commission. WPG as the broker of the Irving-Banco sublease brought this suit against Park Avenue alleging tortious interference with its contractual rights, since WPG would have been entitled to a commission had the Irving-Banco sublease been consummated. Park Avenue then made a motion to dismiss the complaint for failure to state a cause of action. In submitting this motion, the moving party did not present evidentiary material in its support. The court therefore was required to determine the motion by deeming the allegations in the amended complaint to be true and to construe the pleadings in the light most favorable to the plaintiff (4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.36; cf. *Rovello v Orofino*

*Realty Co.,* 40 NY2d 633). Special Term denied the motion to dismiss, and I would affirm the determination of Special Term. The amended complaint alleges, *inter alia,* that Irving employed WPG as a broker; that WPG procured Banco as ready, willing and able to sublease the premises; that Park Avenue knew of WPG's employment and of the impending Irving-Banco sublease; that Park Avenue nonetheless instituted a suit against Irving to prevent consummation of the sublease alleging a nonexistent agreement between Irving and Park Avenue; and that this resulted in damage to WPG. These allegations meet the requirements of stating a cause of action for tortious interference with a contract; namely: (1) the existence of a valid contract;* (2) the defendant's knowledge of that contract; (3) the intentional procuring of a breach of that contract; and (4) damages to the plaintiff *(Israel v Wood Dolson Co.,* 1 NY2d 116, 120; *Hornstein v Podwitz,* 254 NY 443). Three of the four elements outlined require no further elaboration; however, one element (viz., intentional procuring of a breach) requires, I believe, some elaboration since it is pivotal to my conclusion that plaintiff has stated a cause of action. The intentional procuring of a breach of contract has been defined as an intentional doing of a wrongful act without reasonable legal or social justification *(Campbell v Gates,* 236 NY 457, 460; *Hornstein v Podwitz,* 254 NY 443, 448, *supra).* An action based on tortious interference is not predicated upon an intent to injure but, rather, upon an interference without justification with the contractual rights of another *(Campbell v Gates,* 236 NY 457, 460, *supra).* Protection of a financial interest has been held to provide sufficient reason to interfere with a contract of a third party, *provided, however, that improper means are not employed (Felsen v Sol Cafe Mfg. Corp.,* 24 NY2d 682, 687, rearg den 25 NY2d 896). In the case at bar, Park Avenue initiated a lawsuit to prevent the consummation of the Irving-Banco sublease. To that end, it urged that it acted pursuant to an "agreement," claimed by Irving to be fictional. Park Avenue also, by bringing that suit, effectively breached its own contract with Irving which provided that a sublease or assignment to a defined group of tenants required no prior permission of Park Avenue. Assuming *arguendo* that Park Avenue had an equal or superior economic right to protect by preventing consummation of the Irving-Banco sublease, it would appear that the pleadings state a cause of action in alleging that improper means were employed by Park Avenue to protect that economic interest. One final observation is in order: The mere fact that Park Avenue could be viewed as not intending to interfere with WPG but rather only with the Irving-Banco sublease does not deprive WPG of its standing to sue. The net result of Park Avenue's acts was a harm to WPG which was knowingly inflicted by Park Avenue. This brings those acts within the ambit of a cause of action for tortious interference. To conclude otherwise would result in the court's sanctioning immunization of obvious wrongdoing to those "farsighted and fleetfooted enough to avoid obvious categorical liability" *(Williams & Co. v Tuttle & Co.,* 6 AD2d 302, 306, *supra).* Accordingly, the order of the Supreme Court, New York County, entered October 5, 1977, denying defendant's motion to dismiss the complaint for failure to state a cause of action, should be affirmed.

---

* The existence of a valid contract also encompasses negotiations which fell short of consummation solely due to tortious interference *(Williams & Co. v Tuttle & Co.,* 6 AD2d 302, 304, mot for lv to app den 5 NY2d 710).