*575 OPINION OF THE COURT
Alan J. Saks, J.
Motion for leave to amend the complaint is granted. The complaint alleges that, at the invitation of the Soviet government, plaintiff formed a consortium to market commemorative coins for the 1980 Moscow Olympic Games. By May, 1977, the consortium consisted of plaintiff, Loeb Rhoades & Co., Inc. (Loeb Rhoades), and Occidental Petroleum Corp. (Occidental), at which time the three of them entered into a written agreement among themselves providing, inter alia:
“Prior to the submission of our Olympic coin proposal to the Bank for Foreign Trade of the USSR on this date, the undersigned have confirmed the following understanding among them concerning their respective participation in the proposed new company referred to in the Proposal.
‘Participant Investment Percentage
Interest
Occidental
Petroleum $1,625,000 70%
Corp.
Loeb Rhoades &
Co., Inc. $ 375,000 22%%
United Euram
Corp. -0-7%%
“If additional equity capital is needed the subsequent equity interest of the parties will be based on the pro rata amount of such additional equity investment by each party to this agreement. Should there be a disagreement on such a need for additional capital equity the matter will be submitted to arbitration under the customary rules of the American Arbitration Society.”
Plaintiff’s position is that it did not have to contribute to the capital because of its prior services and expenses in forming the consortium.
It is alleged that, during the final phases of negotiations with the Soviets on the terms of the franchise, Occidental demanded that plaintiff be bought out for $250,000, and when it refused, the other members excluded it from the venture and appropriated it to themselves.
*576 Defendants contend that plaintiff participated in the initial joint bids to the Soviets; that despite the written agreement no joint venture including plaintiff ever came into existence.
There is no dispute that ultimately the Soviets made a deal with a group consisting of Occidental, Loeb Rhoades, and other persons or entities not including plaintiff.
Originally, the complaint alleged only a cause of action to impose a constructive trust on the assets of the alleged joint venture. By leave of another Justice, which is still being litigated, it was amended to include a cause of action against Armand Hammer, Occidental’s chief executive, for fraud. Now, plaintiff seeks further leave to amend the complaint in two respects. First, it seeks to add a new cause of action for tortious interference with contract negotiations, against all defendants except Hammer. In opposing this amendment, defendants contend that the allegations of fact in the proposed amended complaint would not state a cause of action for such tortious interference and that, even if they did, the addition of such a cause would be barred by the Statute of Limitations. They also contend that this amendment, as well as the other (discussed infra) should be denied for laches.
Interference with a reasonably expected economic advantage is actionable when a contract would have been entered into but for the fraudulent, deceitful, or malicious conduct of a third party. (Optivision v Syracuse Shopping Center Assoc., 472 F Supp 665, 685.) The plaintiff must allege both unlawful means and that a contract would have resulted but for the interference. (Susskind v Ipco Hosp. Supply Corp., 49 AD2d 915.) The interferer’s status as a competitor “may excuse him from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer” (Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 191). Similarly, justification may excuse otherwise impermissible conduct, depending on the circumstances of the particular case. Elements to be considered include: the nature of the interferer’s conduct, the relationship between the various parties, and the social desirability of protecting *577 the expectancy weighed against the interferer’s freedom of action. (45 Am Jur 2d, Interference, § 27.) For instance, the desirability of protecting a public interest may afford justification or privilege to interference that would otherwise be actionable. (Rudoff v Huntington Symphony Orch., 91 Misc 2d 264 [App Term, 2d Dept].) Generally, justification is a question for the jury. (45 Am Jur 2d, Interference, §27.)
Conversely, otherwise lawful acts may give rise to liability for interference if there is a relationship of confidence between the parties. (Id., § 13.)
The court is not aware of any decisions in which the relationship between the interferer and the interferee was that of co ventures or prospective co ventures. However, it holds, accepting the facts alleged and proposed to be alleged as true for the purposes of this motion, the relationship would impose a duty of fidelity between the parties, analogous to that in the relationships between employer and employee (see, e.g., Jones Co. v Burke, 306 NY 172) and distributor and manufacturer (see, e.g., A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369).
Defendants contend that they were motivated by legitimate business concerns, comparing their actions to those in Guard-Life Corp. v Parker Hardware Mfg. Corp. (supra) and Optivision v Syracuse Shopping Center Assoc. (supra), where unlawful tortious interference with prospective contractual relationships on economic advantage was not found. In Guard-Life, the interference was by a rival merchant competing for exclusive distributorship rights. There was no special relationship between the parties, and wrongful means were not alleged. Similarly, in Optivision the interferer was the plaintiff’s competitor, who was seeking an exclusivity clause in a shopping center lease. Although the clause ousted plaintiff from its tenancy, it was held that the interferer was a competitor motivated solely by legitimate business concerns.
In contrast, the complaint here alleges more than a competitor’s bid to secure a business advantage. Rather, it asserts an attempt to deprive a fellow venturer of an already earned share in the prospective contract. Because the scheme was carried out in breach of a duty of fidelity *578 owed to the plaintiff, the “wrongful means” aspect of the test has been satisfied.
Defendants’ next contention, that the cause of action would be defective because it does not allege that plaintiff would have obtained a contract but for the interference, is without merit. It is enough that plaintiff allege that the consortium, of which it had previously been a member, was successful in obtaining the coin contract. Whether plaintiff can prove that no additional capital was required or that the issue of increased capitalization was not a factor in the exclusion of plaintiff from the venture need not be decided at this time.
Since the original complaint gave full notice of the transactions sought to be proved, an amendment that would merely add a new theory of liability is not barred by the three-year Statute of Limitations for injury to property (CPLR 214, subd 4), because the complaint was served within that period and the amendment would relate back to the time of such service. (CPLR 203, subd [e].)
The second proposed amendment is to add a demand for punitive damages to the cause of action to impose a constructive trust. Defendants contend that this amendment would be patently improper, because punitive damages may not be awarded for breach of contract unless the defendant has grossly defrauded the public or demonstrated “such wanton dishonesty as to imply a criminal indifference to civil obligations” (citing Walker v Sheldon, 10 NY2d 401, 405). However, the constructive trust cause of action is not based on mere alleged breach of contract. It is, rather, alleged expressly and impliedly that defendants breached a relationship of trust and confidence and, in effect, “stole a deal” that plaintiff had initiated, using the Soviet contacts that he had originally established. This is a far cry, if assumed to be true, from alleging mere failure to perform a promise. It would be premature at this stage of the litigation to preclude the plaintiff from proving the type of morally culpable conduct that would support an award of punitive damages. The court says this without prejudice to a motion by defendants for accelerated judgment on the punitive damages claim based on a showing by defendants that no factual predicate for the award thereof *579 is present, which motion would put plaintiff to its proof on that issue. (See Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18.)
The only prejudice relied on by defendants is that they have already participated in the taking of certain depositions and that they tailored their examinations thereat to the theories of liability then pleaded. They do not show how they would have examined differently had they been on notice of the theories plaintiff now proffers. Indeed, except for one page, the transcripts of the depositions have not even been submitted on this motion. It is thus not possible to conclude at this point that defendants have carried their burden of showing that their trial preparation has been irreparably prejudiced or indeed prejudiced at all. In any event, since other discovery is still in progress and the case is nowhere near trial, defendants will have ample opportunity to seek leave to conduct additional deposition of the same witnesses on oral questions and for related appropriate relief. They have not made such application on this motion.
Accordingly, plaintiff’s motion is granted in all respects, the amended complaint annexed to plaintiff’s reply affidavit as exhibit C shall be deemed served 10 days after service hereof, with notice of entry.