Najieh Rashed CRIGLER, as Trustee of numbered A Serasin Bank of Switzerland Account, individually and on behalf of all others similarly situated, Plaintiff,

v.

PENNZOIL COMPANY, Defendant.

No. 88 Civ. 3216 (GLG).

United States District Court, S.D. New York.

June 29, 1988.

Beigel & Sandler, New York City (Francine Schwartz Bober, Richard J. Lipschultz, Lewis S. Sandler, Herbert Beigel, of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City by Arthur L. Liman, Mark A. Belnick, Stephen M. Merkel, Franz W. Paasche, for defendant.

## OPINION

GOETTEL, District Judge:

The plaintiff Crigler is the trustee of a numbered bank account at A. Serasin Bank in Zurich Switzerland. She holds powers of attorney with respect to ten percent debentures of Texaco Inc. due in September 1990.

The defendant Pennzoil Company is a Delaware corporation with its principal place of business located in Texas.

The plaintiff brings this putative class action against Pennzoil seeking to recover for alleged tortious interference by Pennzoil with debenture contracts between Texaco and the plaintiff and the members of the putative class.

Before us is Pennzoil's motion to dismiss under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56. Pennzoil has also moved for sanctions under Fed.R. Civ.P. 11 and attorneys' fees pursuant to 42 U.S.C. § 1988. The plaintiff Crigler has moved for summary judgment pursuant to Fed.R.Civ.P. 56.

BACKGROUND

The facts of the Texaco–Pennzoil litigation are well known, and its genesis is recounted in the Supreme Court's opinion in *Pennzoil Co. v. Texaco, Inc.,* — U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). On February 8, 1984, Pennzoil filed a complaint against Texaco in the Texas state court, claiming that Texaco had tortiously interfered with Pennzoil's contract with the Getty Oil Company for the purchase of three-sevenths of Getty's common stock. The Texas jury returned a verdict in Pennzoil's favor on November 19, 1985, awarding compensatory damages of $7.53 billion and punitive damages of $3 billion. On December 10, 1985, the Texas trial court entered judgment for Pennzoil in the full amount of the jury verdict, plus interest.

Under Texas law, Pennzoil had the right to enforce its judgment by securing liens on Texaco's real property within Texas. See Tex.Prop.Code Ann. §§ 52.001–.006 (1984). (One estimate puts the value of this property at approximately $5 billion.) As a money judgment creditor, Pennzoil was in a position to take possession of these assets after thirty days from the time the judgment was signed, under Tex.Rule Civ.Proc. 627. Texaco, on the other hand, was permitted under Tex.Rule Civ.Proc. 364(a) to suspend the execution of the judgment pending appeal, and prevent Pennzoil from obtaining its property. However, before it could obtain a stay, Texaco was required under that rule to post a bond equal to the amount of the judgment, interest, and costs. Therein lies the rub; the world's surety bond capacity does not begin to approach the amount required of Texaco under Texas' bond provision. *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1138 (2d Cir.1986), *rev'd,* — U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

Hours before the Texas trial court entered judgment, Texaco filed an action in this Court (Brieant, J.), seeking an injunction against enforcement of the judgment. Texaco claimed, *inter alia,* that application of the Texas bond and lien provisions would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Texaco won an injunction, and the Second Circuit affirmed. However, the lower courts' decisions were overturned on April 6, 1987 by the Supreme Court, which ruled that they should have abstained. *Pennzoil,* 107 S.Ct. at 1525.

At the same time the parties were pursuing their litigation in the federal courts, Texaco pursued an appeal to the Texas Court of Appeals. On February 12, 1987, that court affirmed the judgment as to compensatory damages, but remitted the punitive damages award to $1 billion. Subsequently, on the day after the Supreme Court's decision, Texaco again petitioned the Texas Court of Appeals, seeking to stay enforcement of the judgment pending exhaustion of Texaco's appellate remedies. That court temporarily enjoined Pennzoil from taking any action to enforce the judgment, and Texaco from encumbering or conveying any assets (with certain exceptions), until it ruled on Texaco's petition.

On April 12, 1987, one day before the scheduled hearing on its petition before the Texas Court of Appeals, Texaco voluntarily filed for protection under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York. This action of course mooted the Texas court petition, and the scheduled hearing was adjourned.

Pennzoil and Texaco subsequently reached a settlement concerning the judg-

ment and all matters relating to their litigation. This settlement was approved and confirmed by the Bankruptcy Court on March 23, 1988 pursuant to an overall plan of reorganization for Texaco. The Official Committee of Unsecured Creditors of Texaco Inc. formally supported the reorganization plan, and neither plaintiff nor any other Texaco bond indenture trustee filed an objection to confirmation of the reorganization. The confirmed reorganization plan reinstated and rendered unimpaired all of Texaco's obligations under its notes and debentures.

Throughout the state and federal litigation, Pennzoil of course consistently maintained that it was entitled to full security for its judgment, and that it was entitled to the rights accorded to it by the bond and lien provisions of Texas law. However, at no time during the litigation did Pennzoil in fact cause to be filed or issued any manner of lien or attachment against Texaco property.

Against this background, the plaintiff alleges that Pennzoil tortiously interfered with her and the putative class members' debenture agreements with Texaco.[1] The gravamen of her complaint is that Pennzoil's insistence that Texaco comply with Texas' bond and lien provisions forced Texaco to file for bankruptcy and thereby default on its debenture agreements. The alleged wrongfulness in Pennzoil's having done so lies in the fact that, according to the plaintiff, Texas' bond and lien provisions impermissibly burdened Texaco's right to appeal in violation of Texaco's rights under the Due Process and Equal Protection clauses of the United States Constitution. Moreover, according to the plaintiff, full security was not necessary to protect Pennzoil's financial interests in its judgment. The plaintiff alleges that she sustained damages because speculation over the possibility that Texaco would file for bankruptcy, and the actual filing, caused the price and liquidity of Texaco's debentures to deteriorate.[2]

Thus is born a new star in our rogue's gallery of frivolous lawsuits. This case is a bit of nonsense, a transparent petition for a license to mine Pennzoil's deep pockets, and we will not allow it. Indeed, we feel compelled to return the favor, and allow the defendant to rummage a bit in the plaintiff's pockets.

DISCUSSION

■ The elements of a claim for tortious interference with contract under New York law are well established. They are: (1) the existence of a valid contract; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of a breach of that contract without economic or other lawful excuse or justification and (4) damages to the plaintiff resulting therefrom. *E.g., Alvord and Swift v. Stewart M. Muller Construction Co.,* 46 N.Y.2d 276, 413 N.Y.S.2d 309, 312, 385 N.E.2d 1238, 1240–41 (Ct.App.1978); *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1982). Whether the plaintiff has sufficiently alleged the fourth element is questionable. What is not in doubt is that the third element presents an insuperable obstacle to the plaintiff's claim.

First of all, although Texaco's filing for bankruptcy was an event of default under

---

1. The complaint also strongly suggests a claim grounded in 42 U.S.C. § 1983, for deprivations of Texaco's federal constitutional rights. See Complaint at ¶¶ 1 and 57(3). However, the plaintiff has disavowed any such claim.

The plaintiff also complains that for various reasons the Texas verdict was wrongly decided. We of course do not sit as an appellate court to the Texas state courts. *See, e.g., Pennzoil Co. v. Texaco, Inc.,* — U.S. —, 107 S.Ct. 1519, 1534, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). (If we did, we would find that the amount of damages awarded could not be supported by any rational theory of damages. Perhaps the

Texas jury did not understand that ten billion dollars is *ten thousand million* dollars. Or perhaps they just like to think big in Texas.)

2. According to the complaint, two bond rating agencies, Standard & Poor's and Moody's, downgraded Texaco's debentures to noninvestment grade after Texaco filed for bankruptcy. (We note that the rating on Texaco's bonds had experienced a decline before the Texas trial court even entered the judgment, which was of course long before Texaco filed for bankruptcy. *Pennzoil Co. v. Texaco, Inc.,* — U.S. —, 107 S.Ct. 1519, 1523, 95 L.Ed.2d 1 (1987).)

the indenture agreement in question here, there is a fair question as to whether it constituted a breach. *See In re Texaco Inc.*, 73 B.R. 960, 964–65 (Bankr.S.D.N.Y. 1987).

Second, even if there was a breach, it is a fair question whether the plaintiff sustained any damages therefrom. She does not, and could not, claim that she sustained any pecuniary losses directly from the breach. Under the confirmed reorganization plan, the plaintiff's contractual rights were fully reinstated and rendered unimpaired. There does remain the question of whether the plaintiff suffered consequential damages by virtue of the alleged decline in the market value of the bond, which decline has allegedly persisted notwithstanding the confirmation of the reorganization plan. That may be a somewhat closer question, but it is one which we need not decide. We need not decide it because even if it were true that there was a breach, and that the plaintiff thereby suffered some variety of damages, Pennzoil nevertheless could not be held liable therefor to the plaintiff.

It could not be clearer that one may protect one's financial interests even if as a consequence thereof the contractual rights of a third party will be injured, provided of course that one does not employ improper means. As the New York Court of Appeals stated long ago, "[p]rocuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong." *Felsen v. Sol Cafe Manufacturing Corp.*, 24 N.Y.2d 682, 687, 301 N.Y.S. 2d 610, 613, 249 N.E.2d 459, 460–61 (1969). This proposition has wide acceptance. *E.g., Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376 (5th Cir.1977); *Posa, Inc. v. Miller Brewing Co.*, 642 F.Supp. 1198, 1204 (E.D.N.Y.1986); *Williamson, Picket, Gross, Inc. v. 400 Park Avenue Co.*, 63 A.D.2d 880, 405 N.Y.S.2d 709, 712 (1978) (Lane, J., dissenting). The plaintiff wisely makes no claim that Pennzoil's actions were motivated by any purpose other than realizing its substantial financial interest in its $11 billion judgment. The plaintiff

nevertheless suggests that Pennzoil acted wrongfully because it sought to protect its interest by means of enforcing its rights under Texas' bond and lien provisions. This was wrongful because, according to the plaintiff, those provisions impermissibly burdened Texaco's right to appeal, in violation of Texaco's rights under the Due Process and Equal Protection clauses of the United States Constitution.

The notion that by standing on its rights under Texas law Pennzoil acted wrongfully, let alone toward the plaintiff rather than Texaco, is hogwash. Moreover, any doubts that the plaintiff could possibly have had over the frivolousness of her Fourteenth Amendment argument should have been erased by the language of three of the concurring opinions in *Pennzoil Co., supra.* Justices Brennan, Marshall, and Stevens stated unequivocally that the argument that Texas' bond and lien provisions violated Texaco's rights under the Fourteenth Amendment was "plainly" without merit. *Pennzoil Co.*, 107 S.Ct. at 1530 (Brennan, J. and Marshall, J., concurring) and 1535–36 (Stevens, J., concurring).

CONCLUSION

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is plain that the plaintiff has not and could not sufficiently allege that Pennzoil intentionally procured a breach of her contract with Texaco without lawful justification, and we therefore grant Pennzoil's motion to dismiss.

■ 42 U.S.C. § 1988 authorizes the Court, in its discretion, to award a reasonable attorney's fee to the prevailing party in a section 1983 action. Despite the plaintiff's protestations to the contrary, this case was clearly fashioned at least in part as a section 1983 action. In its very first paragraph, the complaint states that "this action arises under and requires construction of the Civil Rights Act of 1871, 42 U.S.C. Section 1983...." Moreover, in the final paragraph of the complaint, the plain-

tiff herself seeks attorney's fees under section 1988.

 Even if this complaint did not purport to present a civil rights claim, we would be compelled to award sanctions under Fed.R.Civ.P. 11. The law and principles underlying our decision spring from such authoritative sources as the United States Supreme Court, and, as to New York law, the New York Court of Appeals. They are clear and well established, and the lack of merit to this case is correspondingly obvious. Although the Appeals Court for this circuit has often counseled against chilling creativity in the fashioning of complaints, there comes a point where fertile imaginations produce legal absurdities. This is such an instance.

For these reasons, we find it appropriate to award the defendant an amount not exceeding a reasonable attorney's fee. The exact award will be determined after Pennzoil provides proof of the amount of its attorneys' fees.

SO ORDERED.