■ MARUKI, INC., et al., Appellants, v LEFRAK FIFTH AVENUE CORP. et al., Respondents.—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered December 16, 1988, which, *inter alia,* granted the Lefrak defendants' motion and defendant Gershner's cross motion for summary judgment to the extent of dismissing plaintiffs' second, third, fourth, seventh, ninth, and tenth causes of action; granted the defendants' motions for summary judgment dismissing plaintiffs' fifth, sixth, eighth and eleventh causes of action to the extent of dismissing the claims asserted on behalf of plaintiff Adiva and plaintiff Sansone, and striking $55,000 of plaintiff Maruki's claim for damages, unanimously modified, on the law, to grant the Lefrak defendants' motion to dismiss plaintiff Maruki's claim against Lefrak to recover its obligations to its predecessor, 4K Restaurant Corp., and to dismiss plaintiff Maruki's first, fifth and sixth causes of action for tortious interference with contract, fraud, and punitive damages as against the Lefrak defendants, and otherwise affirmed, without costs.

This action arises from the refusal of the landlord (Lefrak Fifth Avenue Corp. and Lefrak Organization, Inc. [Lefrak or the Lefrak defendants]) to consent to the assignment of a lease for premises in connection with the sale of an existing coffee shop business located in those premises by plaintiff Maruki, Inc. to plaintiff Adiva Food Corp.

The coffee shop had originally been established in May 1972 at 55 West 56th Street, a building owned by Lefrak, pursuant to a lease between Lefrak and RAFCE Food Corp. The lease specifically provided that prior to any assignment of the lease, the tenant was required to obtain Lefrak's consent, which consent would not be unreasonably withheld or delayed. Over the years, the business changed hands many times and Lefrak consistently consented to the assignment of the lease on each successive occasion. In June 1983, the then leaseholder, 4K Restaurant Corp., assigned the lease to plaintiff Maruki, Inc. The agreement between 4K and Maruki provided that Maruki would take occupancy of the coffee shop subject to a wrap-around mortgage, secured by the lease and the coffee shop fixtures. Under Maruki's operation, the coffee shop lost money and defaulted on its rent as well as on its obligations to 4K and other creditors. Consequently, Maruki sought a purchaser for the coffee shop, utilizing the services of a business broker, plaintiff George Sansone, doing business as National Business Brokers. In January 1984 an agreement was made to sell the business to Vasilios Iatrou, who later formed a corporation named Adiva Food Corp.

The contract between Maruki and Iatrou provided for a contract price of $335,738.71, $16,807.94 to be paid upon the signing of the contract, $38,192 at closing, and $280,738.21 on the notes due to the prior owner 4K from Maruki, which Iatrou would assume. In a separate but related contract, Iatrou agreed to pay Sansone a 10% commission at closing.

According to the plaintiffs, they contracted defendant Jerry Gershner, a vice-president of Lefrak, to arrange for the assignment of the lease to Iatrou. They claim that Gershner orally assured them that if Iatrou paid Maruki's back rent, Lefrak's consent to the assignment would be forthcoming. In fact, on January 27, 1984, Adiva paid Lefrak $14,000, representing $9,878.37 back rent owed by Maruki, with the remainder to be credited to future rent. Adiva thereafter entered possession of the premises and commenced to operate the coffee shop.

Subsequently, Lefrak demanded financial information and business records regarding the coffee shop, and financial information concerning Iatrou and Adiva, to which it was entitled under the lease, in order to determine whether to grant its consent to the assignment. Neither Maruki nor Adiva supplied the requested information, and Lefrak refused to consent to the assignment of the lease. Plaintiffs contend that consent to the assignment was not given because Gershner demanded a $30,000 "bribe" which they refused to pay. Meanwhile,

under Adiva's stewardship, the coffee shop continued to lose money, and unable to obtain consent to the assignment of the lease, Adiva withdrew from its contract with Maruki and ceased operating the business on March 20, 1984.

Shortly after the business closed, Maruki, Adiva and Sansone commenced the instant action against Lefrak and Gershner, individually, alleging causes of action for breach of the lease, tortious interference with contract, fraud, prima facie tort, and misrepresentation, with plaintiff Maruki demanding damages of $390,738, representing what it alleged was the contract price, plaintiff Adiva demanding damages in the amount of $416,250 for lost profits in addition to seeking to recover $29,000 for its payment of rent and other debts, and plaintiff Sansone demanding $39,000 for his lost brokerage fee. The plaintiffs also asserted a claim for punitive damages as a result of the alleged bribe demand.

After extensive discovery, the Lefrak defendants moved for summary judgment dismissing all of plaintiffs' claims, other than that for breach of the lease. Defendant Gershner cross-moved for summary judgment dismissing the entire complaint against him. Lefrak claimed that $55,000 of Maruki's $390,738 damage demand was inexplicable since the total contract price was $335,738. Lefrak further claimed that included in the contract price was the assumption of notes owed by Maruki to its predecessor, 4K, in the sum of $280,738 and that since 4K had been dissolved as a corporate entity and in 4½ years had never demanded payment of these notes, this aspect of Maruki's claim was speculative and could not support a claim of damages. Lefrak additionally sought dismissal of the prima facie tort claim, all the claims brought by Adiva and Sansone against it, and Maruki's claims for tortious interference with contract and fraud, as a matter of law. Finally, Lefrak asserted that since plaintiffs failed to allege that Lefrak had authorized, or even knew of, Gershner's alleged bribe demand, it could not be liable for punitive damages for Gershner's actions in his individual capacity. Gershner joined in Lefrak's motion for summary judgment, and also sought summary judgment dismissing the bribe claim against him on the ground that plaintiffs did not establish the facts of the bribe.

The granting of that part of Lefrak's motion seeking dismissal of the unexplained additional $55,000 damages on Maruki's contract claim, which was not opposed by plaintiffs, is not at issue on this appeal.

Defendants are appealing the IAS court denial of that part of their motion which sought summary judgment dismissing Maruki's claim for $280,738, representing its obligation to the prior owner, 4K. The court's denial was based on a finding that since 4K had at one time demanded payment, and the Statute of Limitations had not yet expired, there was a possible issue of fact as to whether 4K had abandoned its claim for payment of these notes. We find no such possible issue of fact. As plaintiff itself admitted, 4K was dissolved as a corporate entity in June 1983, and since 1984 had never made any demand for payment of the notes. Moreover, in 1984, when Maruki instituted a separate lawsuit against 4K, 4K, in answering the complaint, did not assert the alleged $280,738 debt either by way of counterclaim or as an offset against Maruki's claim against it. Maruki's present claim against the defendants for this $280,738 rests solely on the possibility that some day 4K will demand payment of its debt. However, it is clear from the uncontradicted facts that this possibility is an unreal one and, at best, highly speculative. Accordingly, Maruki's claim for damages from Lefrak in this regard must fail, as a matter of law, since damages for the prospective consequences of tortious injury cannot be recovered when so highly speculative *(see, e.g., Strohm v New York, Lake Erie & W. R. R. Co.,* 96 NY 305).

We find that the prima facie tort claim was properly dismissed. The elements of this tort include the intentional infliction of harm resulting in damages, without excuse or justification, by acts which would otherwise be lawful *(e.g., Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 332). Here, plaintiffs failed to allege the critical element that the defendants were motivated solely by the intent to harm in denying consent to the assignment of the lease.

The IAS court also properly dismissed Adiva's and Sansone's claims against the Lefrak defendants. Adiva failed to demonstrate any basis for its claim for lost profits. A tenant not yet in possession may not recover profits which allegedly would have been earned if not for a breach by the landlord preventing the tenant from taking possession *(Whitmier & Ferris Co. v Buffalo Structural Steel Corp.,* 66 NY2d 1013). Here, since Lefrak had not given its consent to the assignment of the lease, Adiva was never lawfully a tenant in possession. Moreover, apart from the infirmity of its status vis-à-vis the defendant landlord, since Adiva admittedly was losing money, and since it submitted no financial records, but instead, only put forth wholly speculative projections regarding earnings potential, it failed to provide the minimal substantiation

necessary to defeat summary judgment on that claim. Adiva's claim against Lefrak for recovery of back rent and other expenses paid was also properly dismissed because of the express language in the contract with Maruki providing that upon the seller's inability to obtain the consent of the landlord, the buyer would receive a full refund of such moneys, advances and other expenses from the seller. Accordingly, any recourse in this regard would be against Maruki, and not these defendants.

We also affirm the IAS court's dismissal of Sansone's claims against Lefrak. Sansone does not plead tortious interference with the brokerage contract, but only that by interfering with the Maruki-Adiva contract, defendants damaged Sansone and caused him to lose his brokerage fee. However, the law is well settled that tortious interference with contract does not extend to a broker who is a stranger to the contract purportedly interfered with, even when defendant landlord knows of the brokerage agreement (e.g., *Williamson, Picket, Gross v 400 Park Ave. Co.,* 63 AD2d 880, *affd* 47 NY2d 769).

We turn finally to the IAS court's denial of the motion to dismiss the plaintiffs' claims for tortious interference with contract, fraud, and punitive damages against Lefrak. These claims are predicated upon plaintiffs' assertion that Lefrak wrongfully withheld consent to the assignment of the lease because of plaintiffs' failure to accede to Gershner's bribe demand. The IAS court held that issues of fact existed concerning the circumstances of the alleged bribe which precluded the grant of summary judgment in favor of defendants. Upon our review of the record, we agree that there are issues of fact concerning whether the bribe demand was made by Gershner which preclude summary disposition of the claims against him. However, the complete absence of any showing by plaintiffs that the corporate Lefrak defendants had initiated or were even cognizant of the alleged bribe demand by Gershner, or that in demanding the bribe Gershner was acting in his authority as a vice-president of Lefrak, is fatal to plaintiffs' claims against the Lefrak defendants. Accordingly, summary judgment should have been granted insofar as these claims are asserted against the Lefrak defendants. Concur— Sullivan, J. P., Carro, Rosenberger and Ellerin, JJ.