The **TECHNOLOGY CONSORTIUM, INC., Plaintiff,**

v.

**DIGITAL COMMUNICATIONS ASSOCIATES, INC., the Racal Corporation and RDN, Inc., Defendants.**

**No. CV 90–1721.**

United States District Court, E.D. New York.

Feb. 21, 1991.

Shlimbaum, Shlimbaum & Jablonski by Lark J. Shlimbaum, Islip, N.Y., for plaintiff.

Latham & Watkins by Neil J. Gelfand, New York City, for defendant Digital.

Sullivan & Cromwell by William R. Norfolk, New York City, for defendants Racal and RDN Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, The Technology Consortium, Inc. ("TTC" or "plaintiff"), a New York Corporation, brings this action based on, *inter alia,* breach of contract, defamation, fraud, and intentional inteference with economic advantage. Named as defendants are Digital Communications Associates, Inc. ("DCA"), Racal Corporation ("RACAL") and RDN, Inc. ("RDN"). Plaintiff seeks monetary relief and punitive damages from defendants, as well as costs, disbursements and attorneys fees. Jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a), inasmuch as TCC is a New York corporation, DCA is a Georgia corporation, and both RACAL and RDN are Delaware corporations. Presently before the Court are DCA's motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as plaintiff's motion to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. After a brief statement of the background facts, the Court will address the parties' motions.

## BACKGROUND

According to plaintiff, TTC had been a sales representative for DCA, and to that end was given an exclusive sales territory. The contract between TCC and DCA could be terminated by DCA without cause only on eighteen months notice to plaintiff. In fact, DCA apparently gave eighteen months notice of termination on December 2, 1988, but on January 4, 1990, after only thirteen months, nevertheless advised plaintiff that it had sold certain assets to RDN, a subsidiary of RACAL, and could no longer accept plaintiff's orders as a sales representative. According to plaintiff, the reason for the eighteen month provision in the contract was to give plaintiff time to obtain and build a new line of products to sell to its customers. During this eighteen month period it was agreed that full commission would be paid to plaintiff for all products sold in plaintiff's territory, and DCA additionally agreed not to contact plaintiff's customers without plaintiff's consent.

According to plaintiff, despite the above-described contractual provisions, since January 4, 1990, one or more of the defendants have contacted plaintiff's customers, within plaintiff's exclusive sales territory, and transacted sales of DCA's products. Defendants have also allegedly made discrediting and damaging statements about plaintiff to plaintiff's customers, thereby damaging or destroying business relationships developed by plaintiff over the course of its agreement with DCA. A specific example cited by plaintiff occured after January 1990, when Brian Fitzgerald, who was an employee of DCA and is now employed by either DCA, RACAL or RDN, personally visited Wang Financial Information Systems ("Wang"), one of plaintiff's most lucrative customers, and "represented to Wang that plaintiff had stopped selling DCA's products, that plaintiff had not been giving Wang the best financial deals possible and that larger discounts would be available to Wang because plaintiff was no longer involved...." *See* Proposed Amended Complaint, para. 20.

The original complaint, in five counts, sought relief on the following bases: (1) breach of contract and defamation based on the assertion that DCA breached its contract with TTC in that it did not give eighteen months notice. In addition, defendants contacted plaintiff's customers without plaintiff's permission in violation of the contractual agreement. As to the defamation claim, plaintiff alleges that defendant contacted plaintiff's customers and represented to them that plaintiff did not give them the best deals possible, causing plaintiff to lose its customers; (2) breach of contract based on plaintiff's allegation that defendant owes to plaintiff commission for sales made in its exclusive sales territory within the eighteen month period; (3) intentional interference with contract, wherein plaintiff alleges that defendants RDN and RACAL interfered with DCA's contractual relationship with plaintiff; (4) intentional interference with economic advantage, based on the allegation that one or more of the defendants intentionally interfered with

plaintiff's prospective economic advantage with its customers, through "wrongful means," in order to harm plaintiff; and (5) misrepresentation and fraud.

By its motion to amend the complaint, plaintiff seeks to withdraw the fraud claim, as well as plead the remaining four original counts with more specificity. To that end, in the amended complaint, plaintiff seeks to add facts to support its defamation and tortious interference with economic advantage claims.

By its motion to dismiss, DCA challenges the complaint on a number of grounds. First, it is asserted that the cause of action for intentional interference with prospective economic advantage does not state a claim because it does not allege that DCA sold its network business to RACAL for the sole purpose of harming TTC. Even with regard to the amended complaint, DCA contends that plaintiff still fails to state a claim, in that plaintiff has conceded that DCA did not sell its network business for the "sole purpose" of harming TTC, and further, that the two examples of "wrongful conduct" cited by plaintiff, i.e., the breach of contract and the alleged contact with plaintiff's customers, fail as a matter of law.

Second, DCA argues that the fraud claim cannot stand because "New York courts hold that a fraud claim does not arise when the only alleged fraud relates to a breach of contract," and, further, that the fraud claim was not pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Third, it is asserted that plaintiff's defamation claim should be stricken for failure to state a claim, or alternatively that TTC should be required to provide a more definite statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. More particularly, DCA contends that plaintiff fails to plead which defendant made the alleged discrediting statements, to whom the statements were made, and the content of the statements.

Even with regard to the proposed amended complaint, DCA reiterates its position that plaintiff fails to state a claim for def-amation based on the failure to plead which defendant made the alleged discrediting statement and the content thereof. In addition, defendant contends that plaintiff fails to specifically plead that the alleged discrediting statements were actually false.

## DISCUSSION

### A. *Plaintiff's Motion to Amend*

■ A party's request to amend its pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987). As the standard implies, leave to amend is to be granted liberally. In point of fact, "refusal to grant leave must be based on a valid ground." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990) (citation omitted). It is to be further noted that one of the more common uses of Rule 15(a) amendments is "to correct insufficiently stated claims or defenses." *See* 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1474 at 529 (1990).

Turning to plaintiff's motion, the Court notes that the complaint names several defendants, and even if DCA's motion to dismiss were granted, plaintiff should be permitted to amend in light of the fact that there are multiple defendants. *See generally id.* Furthermore, plaintiff does not seek to add any new or additional claims, but rather by the amended complaint seeks to plead the intentional interference with prospective economic advantage and the defamation claims with more specificity. Accordingly, plaintiff's motion to amend the complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, is granted. The Court repeats that as a result of the amended complaint, plaintiff's fraud claim is withdrawn. Having granted the motion to amend, the Court turns to address DCA's motion to dismiss.

### B. *Defendant's Motion to Dismiss*

■ On a motion to dismiss, the allegations of the complaint must be accepted as

true, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and the complaint must be construed in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* Furthermore, a complaint cannot be dismissed for failure to state a claim unless it appears, beyond a doubt, " 'that the plaintiff can prove no set of facts in support of [a] claim which could entitle him to relief.' " *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984) (citations omitted), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). With these principles in mind, the Court turns to assess the sufficiency of plaintiff's claims.

Intentional Interference with Economic Advantage

■ With respect to plaintiff's cause of action for intentional interference with economic advantage, the amended complaint alleges that:

> After January, 1990, Defendants or one or more of them, by Brian Fitzgerald, who was at one time employed by Defendant DCA and is now employed by one or more Defendants, personally visited Wang [Wang Financial Information Systems] and represented to Wang that Plaintiff had stopped selling Defendant DCA's products, that Plaintiff had not been giving Wang the best financial deals possible and that larger discounts on Defendant DCA's products would be available to Wang because Plaintiff was no longer involved and Defendants thereby caused Wang to refuse to purchase products from Plaintiff.

Amended Complaint at para. 20. Defendant claims that this cause of action must be dismissed because "TTC's opposition papers acknowledge the obvious—that DCA did not sell its network business to RDN Inc. for the 'sole purpose' of harming TTC." *See* DCA's Reply Memo. at 2. Therefore, inasmuch as DCA argues that plaintiff has failed to allege any "wrongful conduct" on behalf of DCA, or wrongful

means attributable to DCA, it is asserted that this claim fails as a matter of law.

However, plaintiff argues that even if DCA's interference was intended to advance its own interests, the claim for tortious interference must nonetheless be permitted to stand if the means employed by DCA were wrongful. *See Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.,* 657 F.Supp. 917, 920 (S.D.N.Y.1987). As stated by the New York Court of Appeals, examples of wrongful means in this context include: "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone...." *Guard–Life Corp. v. S. Parker Hardware Mfg.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 449 (1980).

In the case at bar, if the facts alleged by plaintiff are true, defendant's conduct may be found to constitute "some degree of economic pressure." *See id.* DCA claims that plaintiff does not specifically allege, in the amended complaint, that DCA's conduct constituted such economic pressure. However, drawing on the principles of *Guard–Life,* it is enough that the conduct alleged can be found by a trier of fact to constitute some degree of economic pressure on plaintiff's customers. *See id.* For example, it has been held that the "wrongful means" test was satisfied where a defendant's conduct involved more than a competitor's bid to secure a business advantage, in that an attempt was made to "deprive a fellow venturer of an already-earned share" in a prospective contract, thus breaching a duty of fidelity. *United Euram Corp. v. Occidental Petroleum,* 123 Misc.2d 574, 474 N.Y.S.2d 372, 375 (Sup.Ct.N.Y. County 1984). In other words, it appears that under New York law, where a particular relationship exists between the parties, and depending upon the circumstances presented, "otherwise lawful acts may give rise to liability for interference...." *Id.* (citation omitted). Here, given the contractual relationship between plaintiff and DCA, and the breach of contract claim, the intentional interference

cause of action cannot be dismissed based on DCA's asserted ground.

DCA further argues that plaintiff's claim is deficient because plaintiff merely alleges that "defendants or one or more of them, by Brian Fitzgerald," interfered with plaintiff's economic advantage, and thus the complaint allegedly fails to state which defendant made the allegation. However, in the Court's view it is a question of fact as to which defendant actually employed Brian Fitzgerald on the date the alleged statements were made; the important point for the purpose of this motion is that plaintiff has pleaded the potential economic pressure sufficient to satisfy the requirements of the Federal Rules. *See* Fed.R.Civ.P. 8. Accordingly, the motion to dismiss this claim is denied.

Defamation

■ As to the defamation claim, plaintiff alleges in its proposed amended complaint that Brian Fitzgerald, a one-time employee of DCA, visited one of plaintiff's most important customers and represented that plaintiff had stopped selling DCA's products. *See* Amended Complaint at paras. 19–20. In addition, it is asserted that Fitzgerald told the customer that plaintiff had not been giving the best deals possible and that larger discounts would be available because plaintiff was no longer involved. *See id.*

Defendant contends that plaintiff's proposed amended claim is defective because it fails to plead: (a) which defendant made the alleged discrediting statements, (b) the content of the statements, and (c) that the alleged discrediting statements were false. Defendant cites, *inter alia, Montana v. Screen Actors Guild,* No. 89 Civ. 4329 (1990 WL 33590) (S.D.N.Y. Mar. 23, 1990), in which a defamation claim was dismissed, to support its position that the amended claim fails to sufficiently state the cause of action. However, the facts in the *Montana* case are readily distinguishable from the case at bar. In *Montana,* plaintiff alleged "intentional slanderization" and

"blacklisting," but failed to make any specific allegations as to what the slander was, who said it, or when it was made. *See id.* In this case, plaintiff alleged what the slander was, who said it, and approximately when it was said.[1]

Defendant also argues that the provisions of Rule 12(e) of the Federal Rules of Civil Procedure would require a defamation claim to include the nature of the statements and the person to whom the statement was made. *Cannizzaro v. Bache, Halsey Stuart Shields, Inc.,* 81 F.R.D. 719, 722 (S.D.N.Y.1979). However, as noted above plaintiff has alleged that Brian Fitzgerald made the discrediting statement. In the Court's view, as noted above it remains a question of fact as to which defendant employed Fitzgerald when the statement was made. In addition, plaintiff has pleaded the nature of the statement; to wit, "that plaintiff had stopped selling DCA's products, that plaintiff had not been giving Wang the best financial deal possible, and that larger discounts on defendant's products could be available to Wang because plaintiff was no loner involved." *See* Amended Complaint at para. 20. Of course this Court takes no position on the merits of plaintiff's claim, but guided by the principles of the Federal Rules, the claim cannot be dismissed on this basis. *See* Fed.R. Civ.P. 8, 12. This is particularly true in light of the Second Circuit's acknowledgement that "[c]omplaints which do not plead the allegedly defamatory statements *in haec verba* have in the past been held sufficient." *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (citations omitted); *see also Foster v. Turner Broadcasting Sys.,* 844 F.2d 955, 958 n. 3 (2d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988).

Finally, defendant correctly asserts that plaintiff has not alleged falsity with respect to the alleged defamation. To this end, defendant relies on *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 397 N.Y.S.2d 943, 949–950, 366 N.E.2d 1299, 1305–06 (holding that plaintiff must

---

**1.** The Court further notes that in the *Montana* case, it was pointed out that as to the slander claim, the Federal Rules require only *sufficient* notice to the defendant of alleged defamatory communication, and that the arguably heightened pleading requirement of the state law was not applicable.

plead falsity), *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). However, *Rinaldi* involved a public official, and therefore the holding of that case was in accord with *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which required that falsity be alleged when the plaintiff is a public official. In *New York Times,* the Supreme Court held that the First Amendment limits the reach of state defamation laws in the case of public officials. *Id.* at 283 & n. 23, 84 S.Ct. at 727 & n. 23. That case concerned freedom of expression on public questions and public issues, however, it is to be noted that "[i]n libel actions brought by private persons ... the competing interests [are] different." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 756, 105 S.Ct. 2939, 2944, 86 L.Ed.2d 593 (1985) (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). This is so "because private persons have not voluntarily exposed themselves to increased risk of injury from defamatory statements and because they generally lack effective opportunities for rebutting such statements...." *Id.* In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court addressed the defamation issue as raised by a private plaintiff with respect to defamatory speech which affected the private individual's reputation. There, the Court held that the *New York Times* rule could not be extended to apply to the situation where the plaintiff is a private person, although liability may not be imposed without some fault. *Id.* at 346–47 & n. 10, 94 S.Ct. at 3010–11 & n. 10. Thus, based on a reading of Supreme Court precedent, it does not appear that plaintiff is required to plead falsity.

Furthermore, it is to be noted that common law did not require that a plaintiff allege falsity, since falsity was presumed, and the defendant was required to prove that the statement was true. *See King v. Tanner,* 142 Misc.2d 1004, 539 N.Y.S.2d 617, 620 (Sup.Ct.N.Y. County 1989) (citations omitted); *see also Foster,* 844 F.2d at 958 n. 5 (citations omitted). In sum, it is not at all clear that a private plaintiff suing for the acts of a non-media defendant must

allege falsity, and therefore plaintiff's cause of action should not be dismissed on this ground. *See King,* 539 N.Y.S.2d at 620–21. As noted above, a complaint cannot be dismissed for failure to state a claim unless it can be shown, beyond a doubt, that "plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Dahlberg,* 748 F.2d at 88. Therefore, inasmuch as it has not been established that a private plaintiff who alleges defamation as to speech which does not involve a public issue must also allege falsity, *see Foster,* 844 F.2d at 958 n. 5, the motion to dismiss the defamation claim is denied.

Finally, the Court notes that DCA's motion to dismiss the fraud claim is rendered moot by the withdrawal of that cause of action from plaintiff's amended complaint.

## CONCLUSION

For the reasons stated above, plaintiff's motion to amend the complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, is granted. In addition, based on the discussion above, DCA's motion to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, is denied.

SO ORDERED.