**100% GIRLS BRAND, INC.,**
Plaintiff–Appellant,

v.

**HILSON MANAGEMENT CORP.,**
individually and as agent,
Defendant–Appellee.

No. 01–7012.

United States Court of Appeals,
Second Circuit.

Nov. 27, 2001.

Appeal from the United States District Court for the Southern District of New York, John S. Martin, Jr., D.J.

Joseph Lee Matalon, Esq., New York, NY, for appellant.

Joseph Paykin, Esq.; James D. Christo, on the brief, Raice, Paykin, Krieg & Schrader, New York, NY, for appellee.

Present WALKER, Chief Judge, OAKES, and SOTOMAYOR, Circuit Judges.

---

1. We address the merits of the district court's loss calculation in an opinion filed separately.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is VACATED and REMANDED for further proceedings not inconsistent with this order.

Plaintiff-appellant 100% Girls Brand, Inc. ("100% Girls Brand") appeals from the December 7, 2000 judgment granting defendant-appellee Hilson Management Corporation's ("Hilson") motion for summary judgment pursuant to Fed.R.Civ.P. 56 on 100% Girls Brand's claim of tortious interference with business relations.

This action stems from the refusal of Hilson, which is apparently the agent of the unidentified owner of a certain property in Manhattan, to consent to a sublease of that property by tenant Bugle Boy Industries, Inc. ("Bugle Boy") to prospective subtenant 100% Girls Brand. In March 2000, 100% Girls Brand and Bugle Boy entered into a sublease agreement that, under the terms of Bugle Boy's master lease with Hilson, was subject to Hilson's approval. Specifically, the master lease provided that Hilson could not "unreasonably" withhold its approval, and expressly provided for the withholding of consent where the proposed subtenant would tend to impair the dignity or character of the building, would impose additional demands on the landlord in the operation of the leased property, or possessed a net worth less than that of the existing tenant. After initially making arrangements for the payment of rent and securing financial guarantees from 100% Girls Brand's parent company, Hilson gave Bugle Boy a sublease for a different subtenant and told Hilson that, if it refused to accept the new sublease, Hilson would not consent to Bugle Boy's sublease with 100% Girls Brand. When Bugle Boy complied with Hilson's demands, 100% Girls Brand brought the instant suit, claiming that Hilson "wrongfully, maliciously, intentionally and unjustifiably interfered with the contractual relationship between plaintiff and Bugle Boy."

In granting Hilson's motion for summary judgment, the district court found that Hilson's refusal did not constitute tortious interference with 100% Girls Brand's relationship with Bugle Boy because 100% Girls Brand failed to raise a factual issue concerning any wrongful conduct on the part of Hilson in refusing to consent to the sublease. On appeal, 100% Girls Brands claims, among other things, that (1) it could not adduce any evidence concerning Hilson's motives and possible wrongful conduct because Hilson did not respond to its discovery requests before the district court closed discovery to consider Hilson's motion for summary judgment; and (2) that the district court wrongly found that a party with approval rights could, by arguing that no contract was ever formed, rely on its own malicious and wrongful refusal to approve a contract to insulate itself from liability for tortious interference with contract.

■ Reviewing this claim *de novo*, and interpreting the evidence in the light most favorable to the non-moving party, *VKK Corp. v. National Football League*, 244 F.3d 114, 118 (2d Cir.2001), we agree with 100% Girls Brand that the district court erred by not allowing 100% Girls Brand a chance to conduct discovery concerning Hilson's motives. Under New York law, a prospective subtenant can proceed with a tortious interference claim against the employee of the tenant's landlord where it is claimed that the employee caused a wrongful refusal to consent to the sublease. *See Maruki, Inc. v. Lefrak Fifth Ave. Corp.*, 161 A.D.2d 264, 555 N.Y.S.2d 293, 296–97 (App. Div. 1st Dep't 1990) (allowing such an action by a prospective assignee). The

concept of wrongfulness encompasses some degrees of economic pressure, *see Guard–Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980), and some breaches of a contractual duty, *see, e.g., Saltano v. Pryor*, 228 A.D.2d 364, 644 N.Y.S.2d 716, 717 (App. Div. 1st Dep't 1996); *Technology Consortium, Inc. v. Digital Communications Assocs.*, 757 F.Supp. 197, 200–01 (E.D.N.Y.1991).

■ Here, Hilson's withholding of consent might have been unreasonable and hence in violation of its contractual obligations under the sublease. In particular, Hilson has not explained its refusal to sublease to a subtenant who does not appear to possess the characteristics warranting the withholding of consent under the relevant terms of the master lease. Thus, if discovery had not been prematurely closed by the district court, 100% Girls Brand might have been able to support its claim for tortious interference by raising an issue as to whether Hilson engaged in any wrongful conduct in withholding its consent to the proposed sublease. As it now stands, it is unclear why Hilson rejected the proposed sublease.

Thus, we vacate the district court's order and remand for further discovery to allow 100% Girls Brand the opportunity to discover evidence of Hilson's possible wrongful conduct in refusing to consent to the proposed sublease. We, of course, express no opinion on whether Hilson acted unreasonably or wrongfully in refusing to approve the sublease in question.

Accordingly, for the reasons set forth above, the judgment of the district court is VACATED and REMANDED for further proceedings not inconsistent with this order.