■ LIBERTY IMPORTS, INC., Respondent, v PHILLIPE BOURGUET et al., Appellants.—Order of the Supreme Court, Bronx County (Norman C. Ryp, J.), dated August 4, 1988, entered on August 10, 1988, redated August 12, 1988 and reentered on August 16, 1988, which granted the motion by petitioner-respondent for preaction disclosure pursuant to CPLR 3102 (c) to the extent of directing defendant Gene Orsenigo to appear and submit for an examination and denied in part the cross motion by respondents-appellants for a protective order pursuant to CPLR 3103 (a), is unanimously reversed on the law, facts and the exercise of discretion to the extent appealed from, petitioner's motion denied and respondents' cross motion for a protective order is granted in full, without costs and disbursements.

In this proceeding, petitioner Liberty Imports, Inc. seeks disclosure prior to service of a summons and complaint pursuant to CPLR 3102 (c). It is petitioner's contention that since 1979, it has been the "exclusive" importer in the United States of a French brand of crackerbread known commercially as "Cracottes", which is manufactured by BSN Groupe of Paris, France. Respondent Phillipe Bourguet is the sales marketing director of BSN Groupe. Although there was no written contract between Liberty Imports and BSN Groupe, petitioner claims that, relying in good faith upon its appointment as "exclusive" importer, as manifested by a continuous course of conduct, it imported, promoted, distributed and sold "Cracottes". However, on or about June 15, 1988, petitioner purportedly discovered that respondent Bonvego 16 Ltd. and its president, respondent Gene Orsenigo, "were wrongfully describing themselves as the 'exclusive' distributors of 'Cracottes' in the United States." According to petitioner, the sudden and unexpected appearance of Orsenigo and Bonvego as self-proclaimed sellers of "Cracottes" constitutes a clear

violation of Liberty Imports' rights as "exclusive" distributor of "Cracottes". In opposition to the petition, respondents point out that not only was there no written agreement between BSN Groupe and Liberty Imports, but petitioner does not even assert that the arrangement had any fixed term or any provision for maintaining the alleged exclusivity for any period of time. In addition, respondents state that BSN Groupe became convinced that Liberty Imports was unable to market "Cracottes" aggressively in the United States, and when Liberty Imports did not produce a marketing proposal which satisfactorily addressed the manufacturer's concerns, BSN Groupe decided to designate an exclusive agent for organizing and controlling the distribution of "Cracottes" in the United States, namely, Bonvego 16 Ltd.

In requesting preaction disclosure, petitioner urges that "[i]t is necessary to take the deposition of respondents in order to determine who has proper authority to sell 'Cracottes' in the United States and further, to ascertain whether there is a cause of action for unfair competition or breach of contract against BSN, Phillipe Bourguet, the importer, Gene Orsenigo and/or Bonvego 16 Ltd." Petitioner's attorney asserts in his affirmation in support of the application that "disclosure is necessary in order to properly frame a complaint, permit the investigation of this matter to proceed so as to properly identify potential defendants, and to identify and evidence the records of the purported distributorship for future litigation." However, the law is settled that disclosure in advance of service of a summons and complaint is available only where there is a demonstration that the party bringing such a petition has a meritorious cause of action and that the information being sought is material and necessary to the actionable wrong. Thus, while a preaction examination may be appropriate to facilitate accurate pleading, it is not permissible as a fishing expedition to ascertain whether a cause of action exists (*Matter of Gleich v Kissinger*, 111 AD2d 130; *Emmrich v Technology for Information Mgt.*, 91 AD2d 777; *see also, Matter of Stewart v New York City Tr. Auth.*, 112 AD2d 939). Only when " 'the facts alleged state a cause of action * * * an examination to determine the identities of the parties and what form or forms the action should take is appropriate' " (*Matter of Stewart v New York City Tr. Auth., supra*, at 940, quoting from *Matter of Houlihan-Parnes [Cantor, Fitzgerald & Co.]*, 58 AD2d 629, 630).

In the instant situation, petitioner has failed to show the existence of any meritorious cause of action against respon-

dents. Since contracts of exclusive agency and distributorship are terminable at will in the absence of an express provision of duration *(Haines v City of New York,* 41 NY2d 769, 772-773), and here there was not even a contract between Liberty Imports and BSN Groupe, no breach of contract cause of action is indicated in the petition. As for the claim of unfair competition, this is no more than a conclusory statement of suspicion or conjecture. Indeed, petitioner concedes that the reason for the desired preaction disclosure is to discover whether a cause of action for breach of contract or unfair competition can be found, and, as heretofore noted, CPLR 3102 (c) is not available for such a purpose. No basis for preaction disclosure having been set forth by petitioner, it was error to grant the application even in part. Consequently, petitioner's motion should have been denied and respondents' cross motion for a protective order granted in full. Concur—Ross, J. P., Milonas, Ellerin and Wallach, JJ.