**SCHMID, INC., Plaintiff,**

v.

**ZUCKER'S GIFTS, INC., Edward Zucker, and Regalos De Colleccion, Defendants.**

**No. 90 Civ. 6615 (LBS).**

United States District Court, S.D. New York.

June 7, 1991.

Goodwin, Procter & Hoar, Boston, Mass. (Dennis R. McBride, of counsel), for plaintiff Schmid, Inc.

Robert Kaplan, New York City, for defendant Zucker's Gifts, Inc.

## OPINION

SAND, District Judge.

Plaintiff Schmid, Inc. ("Schmid") instituted this suit against defendants Edward Zucker, Zucker's Gifts, Inc. ("ZGI") and

Regalos De Colleccion ("Regalos"). The complaint alleges federal racketeering and state law tort and breach of contract claims in connection with Schmid's agreement with W. Goebel Porzellanfabrik ("Goebel") to be the exclusive United States distributor of certain porcelain figurines, known as Hummels. Specifically, Schmid alleges 1) tortious interference by defendants with Schmid's contract with Goebel; 2) tortious interference with Schmid's prospective business relations; 3) fraud and misrepresentation; 4) unfair competition; 5) unjust enrichment and 6) various violations of the Racketeer–Influenced and Corrupt Organizations ("RICO") Act.

The case is presently before the Court on three motions. First, defendant ZGI moves to dismiss the complaint in part pursuant to Fed.R.Civ.P. 12(b)(6). ZGI seeks to dismiss all counts except Schmid's unfair competition claim. Second, ZGI moves to set aside this Court's January 3, 1991 grant of Schmid's motion for a default judgment against the defendants Regalos and Zucker. ZGI urges this Court not to enter a final judgment against these two defendants. Finally, Schmid moves for the entry of a protective order pursuant to Fed.R. Civ.P. 26(c), pertaining to certain information to be produced by the parties which is allegedly confidential. For the reasons discussed below, ZGI's motions to dismiss and to set aside the default judgment are denied. Schmid's motion for a protective order is referred to a Magistrate Judge.

### FACTS

Since 1985, Schmid has been a distributor in the United States of figurines and other porcelain products manufactured by Goebel of Roedental, Germany. These porcelain products, known as "Hummels," are derived from and inspired by the art of Berta Hummel. On November 8, 1988, Schmid and Goebel signed a contract which gave Schmid "the permanent, exclusive right to distribute Goebel Hummel products in the United States and Puerto Rico." The contract obligates Goebel to "use its best efforts, consistent with applicable laws to prevent unauthorized importation of Hum-

mels into the United States and Puerto Rico." Complaint ¶ 8.

Schmid alleges that there are United States retail dealers selling Hummels in the United States which were not obtained from Schmid. According to Schmid, ZGI, a company established in 1985 to sell gifts and camera equipment in the United States to the general public and retailers, is "one of the principal gray marketers of Hummels in this country." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, p. 2. Plaintiff alleges that ZGI is importing into the United States Hummels which it illegally obtained through a shell corporation located in Panama. The alleged shell corporation, Regalos, is owned and operated by Edward Zucker, the president of ZGI. Regalos is registered as a Panamanian corporation, but has no retail or wholesale store in Central or South America and is not engaged in any business activities. The company's resident agent in Panama is a law firm.

Schmid alleges that Zucker and ZGI, through Regalos, have devised a scheme to deprive Schmid of the fruits of its exclusive distribution contract with Goebel through mail, telephone and other means, from ZGI's New York office. Allegedly, it is through Regalos that ZGI fraudulently purchases Hummels from Goebel and has them diverted to New York, where ZGI re-sells them. According to Schmid, "this is done by creating false commercial documents which purport to show orders and payments from shipments to Regalos even though the shipments are made directly to and paid for by ZGI in New York." Complaint ¶ 26. Schmid alleges that as a result of ZGI's illegal actions it has suffered "millions of dollars in damages from lost sales, injury to its goodwill, and other injuries." Plaintiff's Memorandum of law, p. 3.

### DISCUSSION

#### I. *Motion to Dismiss*

ZGI argues that while Schmid may have been injured by increased competition from the importation of Hummels into the United States by Regalos there was no

illegal action by ZGI and therefore Schmid has failed to state a claim upon which relief may be granted. Consequently, ZGI urges this Court to dismiss all but one count of the complaint. In a motion to dismiss, this Court looks to the four corners of the complaint and is required to accept plaintiff's allegations as true and construe those allegations in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if plaintiff can prove no set of facts that would entitle him to relief.

### A. *Tortious Interference with Contract*

■ To state a cause of action for tortious interference with existing contractual relations, a plaintiff must allege 1) the existence of a valid contract between plaintiff and another contracting party; 2) defendant's knowledge of that contract; 3) defendant's intentional procurement of a breach of that contract by the other party; and 4) damages. *See Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.*, 614 F.2d 832, 839 (2d Cir.1980); *Walters v. Fullwood*, 675 F.Supp. 155, 159 (S.D.N.Y.1987); *Guard-life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 406 N.E.2d 445, 428 N.Y.S.2d 628 (1980).

■ Defendant ZGI's knowledge of the contract between Schmid and Goebel and its intent to effectuate a breach of that contract by Goebel are in essence the claims at issue.[1] In its complaint, Schmid claims that the defendants knew that Schmid and Goebel were parties to an exclusive distributorship contract. ¶ 15. It was because of this knowledge, according to Schmid, that defendants fraudulently schemed and conspired through Regalos, an allegedly shell corporation controlled by Zucker, to import Hummels into the United States through a third country in circum-

vention of that agreement. ¶ 13. Schmid urges that by utilizing the Regalos "fiction and subterfuge" that Zucker and ZGI have and continue to transact business with Goebel in furtherance of a conspiracy to deprive Schmid of the fruits of its contract with Goebel. ¶ 14.

In support of its claim that the defendants intentionally caused Goebel to breach its contract, Schmid alleges that through Regalos, Zucker and ZGI send false documentation in the form of orders, invoices and bills of lading for purchases and shipments of Hummels. The purpose of this ploy allegedly is to avoid having to reveal to Goebel or overseas Goebel distributors that Zucker and ZGI were the true parties in interest. Schmid urges that by these misrepresentations and false statements, the defendants conspired to induce Goebel to sell Hummels in violation of its contract with Schmid. Complaint ¶ 13. According to Schmid these breaches have occurred on a regular basis since January 1, 1989 and continue today. Complaint ¶ 16.

Examining the four corners of the complaint, this Court cannot conclude that plaintiff has failed to state a claim. ZGI argues that Schmid, in its amended complaint, has failed to allege with enough specificity that the defendants knew of the contract between Schmid and Goebel which prohibited Goebel from selling Hummels that were destined for shipment into the United States to persons other than Schmid. Yet, the amended complaint offers a number of examples of actions, as outlined above, taken by the defendants to circumvent direct importation of Goebel Hummels into the United States. These allegations support the inference that defendants knew of the exclusive contract between Schmid and Goebel.

### B. *Tortious Interference with Prospective Business Relations*

■ In order to prevail on the common law claim of tortious interference with pro-

---

1. There is no challenge in this case to the validity of the contract between Schmid and Goebel which was signed on November 8, 1988 and continues in effect today. The contract obligates Goebel to sell only to Schmid in the United States and Puerto Rico. Complaint ¶ 10–11.

spective economic advantage, the plaintiff must establish a number of elements. *See PPX Enterprises v. Audio Fidelity Enterprises*, 818 F.2d 266, 269 (2d Cir.1987); *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y.1983). A plaintiff must show that the defendant interfered with "business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper." *Id.* In other words, if the defendant's interference is intended, "at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *PPX*, 818 F.2d at 269; *see also Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 838 (2d Cir.1980).

■ For many of the same reasons discussed above, plaintiff's pleadings on this count survive a motion to dismiss. The Court does not question that defendants' motivation for participating in the United States Hummel market was "to advance its own competing interests." This is the primary motivation for all businesses participating in a grey market. Increased competition creates no cause of action in and of itself. What the law seeks to redress, when found, is fraud and deceit. If the various frauds that are alleged in the complaint are proven and if it is correct that defendants knew about the exclusive distribution contract between Schmid and Goebel, the defendants' conduct may be characterized as "criminalized or fraudulent." Accordingly, the tortious interference count cannot be dismissed.

## C. *Unjust Enrichment*

■ Schmid relies upon equitable principles of unjust enrichment and constructive trust, which under New York law permit a plaintiff to recover money when it has come into the defendant's hands wrongfully and it is, under the circumstances against good conscience for the defendant to keep the money. Specifically, Schmid claims that as a result of defendants' individual and concerted tortious actions, they hold funds derived from their Hummel sales in constructive trust for Schmid. Traditionally, four elements are needed for the imposition of a constructive trust: 1) a promise; 2) a transfer in reliance on the promise; 3) a confidential or fiduciary relationship; and 4) unjust enrichment. *Lines v. Bank of America Nat'l Trust & Savings Ass'n*, 743 F.Supp. 176, 180 (S.D.N.Y.1990). "However, these elements are not talismanic, and courts have held that a constructive trust can be imposed in the absence of some of these factors." *Id.* at 180. As one New York court has written, "the applicability of the constructive trust doctrine is limited only by the inventiveness of [people] who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Reiner v. Reiner*, 100 A.D.2d 872, 474 N.Y. S.2d 538, 541 (App.Div.1984).

Schmid alleges that it has entered into a confidential relationship with Goebel and that the defendants, acting in concert, have "intentionally participated in the furtherance of a preconceived common plan or purpose to unjustly enrich themselves to Schmid's detriment." Complaint ¶ 50. Schmid further alleges that defendants have in fact been unjustly enriched by their conspiracy since they hold funds derived from their Hummel sales in the United States. Based on this allegation, Schmid suggests that the defendants hold millions of dollars in constructive trust for Schmid. These allegations state a claim under the liberal interpretation of the elements for a cause of action for unjust enrichment followed by the New York courts. Since this claim is adequately alleged in the complaint, ZGI's motion to dismiss this claim is denied.

## D. *Fraud, Misrepresentation and RICO*

The basis of Schmid's remaining claims is the civil provisions of RICO. The Second Circuit has not explicitly held that Rule 9(b) of the Fed.R.Civ.P. is applicable to pleading RICO claims. Most other circuits, however, have concluded that Rule 9(b) is applicable to RICO predicate acts which are based on a theory of fraud. *See Cayman Exploration Corp. v. United Gas Pipe*

*Line Co.,* 873 F.2d 1357, 1362 (10th Cir. 1989); *Alan Neuman Productions Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); *Saporito v. Combustion Eng. Inc.,* 843 F.2d 666, 675 (3d Cir.1988); *New England Data Services Inc. v. Becher,* 829 F.2d 286, 289–90 (1st Cir.1987). This also appears to be the rule that courts in this district have followed. *See Newman v. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y. 1986) (important to require 9(b) specificity when the fraud allegations also constitute predicate acts underlying RICO claims and implicate the reputation interests of defendants).

■■■ To state a cause of action under RICO, a plaintiff must allege, in a manner that passes muster under Rule 9(b), "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Plaintiff, in its fraud, misrepresentation and RICO counts alleges that Zucker and ZGI engaged in a conspiracy, through Regalos, to deprive Schmid of the benefits of its contract with Goebel. Complaint ¶ 55. Specifically Schmid's pleadings suggest that the defendants have engaged in a pattern of illegal conduct and committed the required predicate acts by sending wire and postal communications on a regular and continuing basis since January 1, 1989, including purchase orders and other commercial documents, which misrepresent the true purchaser and ultimate destination of the Hummels. Complaint ¶ 56. Schmid alleges that the pattern of these racketeering activities has deprived Schmid of "millions of dollars in damages in its business and property from lost sales." Complaint ¶ 57. For purposes of Rule 9(b) and a motion to dismiss, Schmid in its complaint has identified the requisite elements of a RICO claim and with adequate specificity. For these same reasons, plaintiff's fraud and misrepresentation counts also survive a motion to dismiss.

## II.  *Motion to Set Aside Default Judgment Against Zucker and Regalos*

Next, this Court must consider ZGI's motion to set aside the default judgment against Regalos and Zucker. On January 3, 1991, the Court granted Schmid's motions to enter a default judgment against defendants Regalos and Zucker for failing to answer or otherwise respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure. The Court's endorsement of the motion was filed on January 9, 1991. Subsequently, Schmid submitted forms of judgment which have not been endorsed. In a letter dated February 25, 1991, ZGI opposed the entry of final judgments against those defendants.

■■■ Under Rule 55(c) of the Fed.R. Civ.P., a court may set aside an entry of default "for good cause shown." Since neither Regalos nor Zucker have appeared in this case there is no reason for the Court to amend or set aside its original endorsement. Attorney Kaplan represents only defendant ZGI and as such has no standing to challenge default proceedings against the other defendants. If, however, ZGI is making an application to postpone the entry of the final judgment, it has standing to make such a request pursuant to Fed.R. Civ.P. 54(b). The entry of a final judgment against Regalos and Zucker will be withheld until all the claims and the rights and liabilities of the parties have been determined; however, ZGI's motion to set aside the default judgment is denied. Final judgments will be entered at such time as the case is definitively resolved.

## III.  *Motion for Protective Order*

Since defendant's motion to dismiss has been denied, there remains the question whether this Court should grant Schmid's motion for a protective order, pursuant to Fed.R.Civ.P. 26(c), "to protect the confidentiality of certain information to be produced by the parties" during discovery. Plaintiff's Memorandum in Support of the Entry of a Protective Order, p. 1. This issue is hereby referred to a Magistrate Judge to be determined along with all other general pretrial matters.

SO ORDERED.