**ITALIAN & FRENCH WINE COMPANY OF BUFFALO, INC., Plaintiff,**

v.

**NEGOCIANTS U.S.A., INC., and Lauber Imports, Ltd., Defendants.**

No. 91–CV–803A.

United States District Court,
W.D. New York.

Nov. 10, 1993.

Michael M. Babat, Albert H. Engel, Buffalo, NY, for plaintiff.

Mitchell A. Kramer & Associates (Stacey P. Nakasian, of counsel), Jenkintown, PA, for defendant Negociants U.S.A.

O'Donnell, Fox & Gartner, P.C. (William G. O'Donnell, of counsel), New York City, for defendant Lauber Imports, Ltd.

## ORDER

ARCARA, District Judge.

This matter was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on April 14, 1992. On January 31, 1992, Lauber Imports, Ltd. ("Lauber") filed a motion to dismiss the complaint for failure to state a cause of action. Negociants U.S.A., Inc. ("Negociants") filed a motion to dismiss on February 6, 1992. In response, plaintiff filed a First Amended Complaint on March 21, 1992. In April 1992, Negociants and Lauber filed separate motions to dismiss the First Amended Complaint for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6).

On July 13, 1993, Magistrate Judge Foschio filed a Report and Recommendation recommending that Negociants' and Lauber's motions to dismiss be denied. Item No. 24. Lauber filed objections to the Report and Recommendation on July 29, 1993. Item No. 26. No objections to the Report and Recommendation were filed by Negociants. Plaintiff filed a response to Lauber's objections on

September 8, 1993, Item No. 28, and the matter was deemed submitted.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon *de novo* review of the Report and Recommendation, and after reviewing the court records and the submissions of the parties, the Court adopts the proposed findings of the Report and Recommendation.

In deciding a motion to dismiss, the court is required to accept plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint will be dismissed only if "it appears beyond doubt" that plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court is required to read the complaint with great generosity on a motion to dismiss. *See Yoder v. Orthomolecular*, 751 F.2d 555 (2d Cir.1985).

Applying these principles to this case, the Court finds that plaintiff has stated claims against Lauber for tortious interference with a contract, tortious interference with prospective contractual relations and unjust enrichment. In addition, plaintiff is entitled to seek punitive damages on its intentional tort causes of action. While plaintiff may not ultimately be successful on these claims, at this point in the lawsuit, it has set forth sufficient factual allegations to withstand defendant's motion. Accordingly, Lauber's motion to dismiss is denied for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation.

With respect to Negociants' motion to dismiss, based on the Court's review of the Report and Recommendation and the submissions of the parties, and no objections having been timely filed, the Court denies the motion for the reasons set forth in the Report and Recommendation.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. Richard J. Arcara, District Judge, on April 14, 1992 for determination of all pretrial matters and report and recommendation on any dispositive motions. The action is presently before the court pursuant to Defendant Negociants U.S.A.'s ("Negociants") and Defendant Lauber Imports' ("Lauber") motions to dismiss Plaintiff's First Amended Complaint, dated March 31, 1992.

### BACKGROUND

Plaintiff, a New York corporation and a wholesale distributor of wine and liquor in upstate New York, filed this diversity action on December 12, 1991, asserting causes of action against Defendants Negociants, a California corporation, and Lauber, a New Jersey corporation, for breach of contract, tortious interference with a contract, unjust enrichment, conversion, termination of a contract in violation of New York Commercial Code Section 2–309, and malicious, reckless, and wanton disregard of Plaintiff's rights in violation of public policy.

On January 31, 1992, Lauber filed a motion to dismiss the complaint for failure to state a cause of action. Negociants also filed a motion to dismiss the complaint on February 6, 1992. In response, Plaintiff filed a First Amended Complaint on March 31, 1992, asserting a cause of action for breach of contract against Negociants, and causes of action against Lauber for tortious interference with a contract, tortious interference with contractual relations, and, in the alternative, unjust enrichment.

On April 22, 1992, Negociants filed a motion to dismiss the First Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action. Lauber filed a similar motion to dismiss the amended complaint on April 24, 1992. After briefing

by the parties, oral argument was held before the court on September 3, 1992.[1]

For the reasons as set forth below, Defendants' motions to dismiss the First Amended Complaint should be DENIED.

## FACTS

Plaintiff is a wholesale liquor distributor based in Buffalo, New York whose principal business activity is to purchase and distribute imported and domestic liquors and wines to retail sellers.[2] Negociants is a wholly owned United States marketing company of the Australian wine company which produce the wines at issue in this case. Lauber is a liquor distributor, similar to Plaintiff, who, prior to the actions which preceded this lawsuit, distributed Negociants' wines in the New York City region.

According to its First Amended Complaint, Plaintiff entered into an oral contract with Negociants in July, 1988 to be the exclusive distributor for Negociants' wines in the Western and Central New York regions. On August 17, 1990, Plaintiff's territory was expanded to include the Albany, New York region. Plaintiff's distribution agreement with Negociants was of an indefinite duration.

Since 1988, Lauber had been the exclusive distributor for the Negociants wines in the New York City region. In April, 1991, Plaintiff states that Lauber began distributing Negociants wines in Plaintiff's territory. Allegedly in retaliation, Plaintiff sold Negociants wine in Lauber's territory. On August 20, 1991, Negociants gave the exclusive distributorship of their wines for Rockland, Dutchess, and Putnam counties to Lauber. On November 7, 1991, allegedly without notice to Plaintiff, Negociants gave an exclusive distributorship for the entire New York State region to Lauber, terminating its relationship with Plaintiff. Additionally, Negociants allegedly then failed to fill any further wine orders for Plaintiff, including previously placed orders.

Plaintiff alleges that Negociants' actions in terminating its relationship with Plaintiff were a result of Lauber's threats to Negociants to discontinue its distribution of Negociants wines unless it was given the entire New York State territory. Plaintiff also alleges that Negociants actually partially terminated its agreement with Plaintiff in August, 1991, without notice, by awarding certain counties previously under Plaintiff's control to Lauber, resulting in a breach of contract. Plaintiff also contends that Lauber, on or about April, 1991, began, without any legal justification for doing so, notifying Negociants that Plaintiff was selling Negociants' products in areas within Lauber's exclusive control. Additionally, Plaintiff alleges that Lauber, on November 8, 1991, sent notices to retailers in Plaintiff's territory identifying itself as the exclusive distributor for Negociants' products, as opposed to Plaintiff. Plaintiff claims irreparable damage from Lauber's alleged tortious conduct. Plaintiff also alleges a cause of action for tortious interference with prospective contractual relations and, alternatively, unjust enrichment against Lauber because of its actions against Plaintiff.

## DISCUSSION

On a motion to dismiss, the court looks to the four corners of the complaint and is required to accept a plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Association,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). The court is required to read the complaint with great generosity on a motion to dismiss. *See*

---

**1.** On July 17, 1992, this court denied Defendants' motions to stay discovery pending the resolution of their dismissal motions.

**2.** The fact statement is taken from the First Amended Complaint, along with other papers filed in connection with the dismissal motions.

*Yoder v. Orthomolecular,* 751 F.2d 555 (2d Cir.1985).

In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz,* 801 F.2d 46 (2d Cir.1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee–Hy Paving Corp.,* 579 F.2d 194, 205 (2d Cir.1978), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 638, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. *See Index Fund, Inc. v. Insurance Company of North America,* 580 F.2d 1158 (2d Cir.1978); *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). In this case, as all parties have cited to New York law, the court concludes that all parties agree that New York law should apply to this action.

### 1. *Negociants' motion to dismiss*

Plaintiff has alleged a cause of action for breach of contract against Negociants for Negociants' actions in terminating its oral distributorship agreement with Plaintiff, without any notice to Plaintiff. Negociants argues that, under New York law, a distributorship is analogous to an employment agreement and, as such, if the agreement is not for a specific term, it is terminable at will by either party.[3] *See Haines v. City of New York,* 41 N.Y.2d 769, 396 N.Y.S.2d 155, 157–58, 364 N.E.2d 820, 822–23 (N.Y.1977); *Chin v. American Telephone & Telegraph,* 96 Misc.2d 1070, 410 N.Y.S.2d 737, 739 (N.Y.Sup.Ct., N.Y.Cty.1978). As agreed by Negociants, Plaintiff states in its amended complaint that the contract with Negociants was an oral agreement for an indefinite term. *See,* First Amended Complaint, ¶ 14.

In *Colony Liquor Distributors, Inc. v. Jack Daniel Distillery,* 22 A.D.2d 247, 254 N.Y.S.2d 547 (N.Y.App.Div. 3d Dep't 1965), the court held that an oral distribution agreement entered into between a liquor wholesaler and a distillery constituted a contract which could only be terminated upon reasonable notice. The court found that, under the circumstances of that case, the contract was to be for a reasonable period of time and could not be terminated without reasonable notice to the distributor. Twelve years later, in *Haines v. City of New York, supra,* an action relating to the development of a sewage treatment plant, the New York Court of Appeals, in dicta, stated that the rule that contracts without an express termination date will be found to imply that performance is intended to continue for a reasonable period of time and will only be terminated upon reasonable notice "should not be applied to contracts of employment or exclusive agency, distributorship, or requirements contracts which have been analogized to employment contracts." *Haines, supra,* 396 N.Y.S.2d at 158, 364 N.E.2d at 822–823. Since that time, courts have interpreted the termination of distributorship agreements, such as the agreement in the instant case, in different ways. *See Copy–Data Systems v. Toshiba America,* 755 F.2d 293 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 80, 88 L.Ed.2d 66 (1985) (oral distributorship agreement between parties held to be terminable only after a reasonable duration and upon reasonable notice); *Midway Beverage Corp. v. Grolsch Importers, Inc.,* 1987 WL 119908 (N.Y.Sup.Ct., Kings Cty.1987) (oral distributorship agreement between beer wholesaler and importer held to be terminable only upon

---

**3.** Negociants also argues, in its reply brief to Plaintiff's opposition to the motion to dismiss, that it had good cause on which to terminate Plaintiff's distributorship. Attached to its reply brief is an affidavit of Gary J. Rosner, Vice President of Sales for Negociants. The court declines to consider the affidavit of Mr. Rosner or Negoci-

ants' affirmative defense of good cause as the pending motion is a motion to dismiss, not a summary judgment motion, and no notice was given to the parties that the instant motion would be converted to a summary judgment motion. *See Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991).

reasonable notice). *Cf., Liberty Imports v. Bourguet*, 146 A.D.2d 535, 536 N.Y.S.2d 784, 786 (N.Y.App.Div. 1st Dep't 1989) (distributorship contracts are terminable at will in absence of an express provision of duration). *See also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 671 (7th Cir. 1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987) (while not holding party's ten day notice of its intention to terminate its agreement unreasonable where written contract was explicitly terminable at will, court, citing *Colony Liquor*, stated that a court could not read an "at-will" provision into an oral agreement).

■ While Negociants argues that *Colony Liquor* is fact specific and that the law in New York is that which is stated in *Haines*, this court disagrees. The principles enunciated in *Colony Liquor* and *Haines* are not necessarily inconsistent. *See Midway Beverage Corp., supra*, at p. 3 (citing both *Colony Liquor* and *Haines* for the same principle of reasonable duration and notice). This court's interpretation of the referenced language in *Haines* is that the dicta states the proposition that distributorship arrangements which are set up and maintained as personal service contracts, such as an agreement with an independent sales representative, are analogous to employment contracts. The court concludes that the law in New York is that distributorship agreements must be analyzed to determine whether they are merely a type of employment contract which may be terminable at will, or whether they require commercial activities which go further than an agreement for personal services. In this case, Plaintiff has been required by Negociants to purchase inventory for resale, to maintain warehouse space for the storage of such inventory, and to actively market and promote the Negociants products which they have purchased for resale to retailers. These requirements differentiate Plaintiff's arrangement with Negociants from other types of distribution contracts in that Plaintiff, as a separate company, is required to make an investment in inventory and other assets, not to merely act as a representative of Negociants selling product which is owned by Negociants. As such, the court concludes that Plaintiff's oral agreement with Negoci-

ants is governed by well-settled New York law which provides that a contract with no stated duration is terminable only after a reasonable duration and after reasonable notice is given. *Copy–Data Systems v. Toshiba America, Inc., supra*, at 301; *Entis v. Atlantic Wire & Cable Corp.*, 335 F.2d 759, 763 (2d Cir.1964); *Colony Liquor Distributors, Inc. v. Jack Daniel Distillery, supra*, 254 N.Y.S.2d at 549 (facts relating to distributorship agreement were "consistent with weight of authority as to duration of a contract involving more than an agency or employment relationship").

■ Additionally, the "reasonable notice doctrine" is well-established in New York law. *Chenoweth & Faulkner, Inc. v. Metro Mobile CTS, Inc.*, 1988 WL 52777 (S.D.N.Y. 1988); *Creative Foods Corp. v. Chef San Francisco*, 92 A.D.2d 462, 458 N.Y.S.2d 917, 918 (N.Y.App.Div. 1st Dep't 1983). If a contract exists for a reasonable duration, a plaintiff is entitled to a reasonable notice of termination. *Chenoweth & Faulkner, supra*, at p. 2. Even if no definite period of termination is originally fixed in the contract, such a contract is not terminable at will by either party, but only upon reasonable notice. *Chenoweth & Faulkner, supra*, at p. 2.

In this case, taking the facts as Plaintiff has recited in its amended complaint as true, an oral agreement between Plaintiff and Negociants did exist from July, 1988 until its termination in November, 1991. Plaintiff asserts that Negociants provided it with no notice when it partially terminated their exclusive distributorship in August, 1991, and again when it fully terminated their relationship in November, 1991. If it can be shown that such notice was not reasonable under New York law, Plaintiff may have a valid claim for breach of contract against Negociants. Contrary to Negociants' assertions, under New York law, it cannot be said that a distributorship contract may always be terminated at will without reasonable notice. Such a determination is necessarily fact specific. *See, Colony Liquor, supra*. Therefore, Negociants' motion to dismiss the First Amended Complaint as against it should be DENIED.

## 2. *Lauber's motion to dismiss*

Plaintiff has alleged three causes of action against Lauber in its amended complaint: tortious interference with a contract, tortious interference with prospective contractual relations, and, in the alternative, unjust enrichment. Specifically, Plaintiff claims that Lauber, beginning in April, 1991, solicited business in Plaintiff's territory, and, thereafter, by virtue of its "inside ties" with Negociants, (see, Amended Complaint, ¶ 43), acted purposely and with malice in fostering a dispute between Plaintiff and Negociants for the express purpose of causing a termination of the distributorship arrangement between Plaintiff and Negociants. Plaintiff claims that, alternatively, as a result of Lauber's actions, Lauber was unjustly enriched by the amount of Plaintiff's lost profits from sales of Negociants wines after its relationship with Negociants was terminated.

### (a) *Tortious Interference with a Contract*

 Under New York State law, a claim may be stated for tortious interference with a contract if a plaintiff alleges (1) the existence of a valid contract between the plaintiff and another contracting party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a breach of that contract by the other party, and (4) damages. *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 292–93 (2d Cir.1992); *Schmid, Inc. v. Zucker's Gifts, Inc.,* 766 F.Supp. 118, 121 (S.D.N.Y.1991); *Guard–Life Corp. v. S. Parker Hardware Manufacturing Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631, 406 N.E.2d 445, 448 (N.Y.1980). Generally, a court must determine whether the interference was "without reasonable justification" or "improper." *Jews for Jesus, supra,* at 292 (quoting, *Guard–Life Corp., supra,* 428 N.Y.S.2d at 631, 406 N.E.2d at 448). The court must balance certain factors in determining whether the interference was justified under the circumstances of the particular case. These factors include: the nature of the defendant's conduct, the defendant's motive, the interest of the plaintiff with which the defendant interfered, the interests the

plaintiff seeks to advance, the social interests at stake, the proximity of the defendant's conduct to the interference, and the relations between the parties. *Jews for Jesus, supra,* at 292; *Guard–Life Corp., supra,* 428 N.Y.S.2d at 631–32 and n. 2, 406 N.E.2d at 448 and n. 2.

In this case, Plaintiff has asserted in the amended complaint that Lauber knew of the distributorship agreement between Plaintiff and Negociants and that Lauber intentionally, by using its "inside ties" with Negociants and its economic power as a large, successful wine distributor, induced Negociants to breach its contract with Plaintiff. Specifically, Plaintiff claims that, during 1991, Lauber conspired with Negociants to reduce Plaintiff's inventory of Negociants wines, while at the same time increasing Lauber's inventory, and further, that Lauber made arrangements with Negociants to have advertising prepared and a full sales force ready in anticipation of Negociants' termination of Plaintiff's agreement. As a result of Lauber's actions, Plaintiff claims damages in the form of lost profits.

 Lauber contends that there was no contract between Plaintiff and Negociants and, therefore, Plaintiff's claim of tortious interference with a contract must fail. Further, Lauber argues that, even if there was a contract, it was terminable at will, and no action for intentional interference with such a contract can be sustained. In support of its contention, Lauber cites *Liberty Imports, Inc. v. Bourguet,* 146 A.D.2d 535, 536 N.Y.S.2d 784 (N.Y.App.Div. 1st Dep't 1989).

In *Liberty Imports,* the plaintiff, an importer of a French cracker manufactured in Paris by the BSN Groupe ("BSN"), claimed that BSN, despite its oral agreement with the plaintiff, designated another agent for organizing and controlling the distribution of its crackers in the United States, in violation of plaintiff's status as the exclusive importer. The court denied the plaintiff pre-action discovery, stating that there had been no demonstration of a viable cause of action as "contracts of exclusive agency and distributorship are terminable at will in the absence of an express provision of duration," citing *Haines v. City of New York, supra.* However, it

appears to this court that the facts in *Liberty Imports* are distinguishable from the instant case. The facts, as outlined in *Liberty Imports,* do not state the substance of the oral agreement between plaintiff and BSN, *i.e.,* whether plaintiff was acting only as BSN's agent in the United States or whether plaintiff was an independent wholesaler. In stating that BSN designated a different agent "for organizing and controlling the distribution of [its crackers] in the United States," it appears to this court that the arrangement between the parties was more of a principal-agent relationship rather than a commercial contract between two independent companies. A principal-agent relationship would certainly be more analogous to a type of employment contract, such as the contracts described in *Haines,* than to the business relationship between the Italian & French Wine Company, the instant Plaintiff and Negociants.

Further, in analyzing this claim, the court notes that it is only required to determine whether Plaintiff has sufficiently stated a cause of action. Whether or not Plaintiff can be successful on the claim, either on summary judgment or after trial, is not at issue here. Based on this standard, the court finds that Plaintiff has sufficiently pled a cause of action against Lauber for tortious interference with a contract. Pursuant to the court's discussion in Section 1 of this Report and Recommendation, it appears that a valid oral distribution agreement existed between Plaintiff and Negociants. At the time that Lauber engaged in the allegedly improper actions which are alleged in the complaint, the court concludes that Lauber knew of the agreement between Plaintiff and Negociants by virtue of the fact that Lauber complained bitterly to Negociants about Plaintiff's alleged entry into Lauber's territory. As to the fourth element of a viable tortious interference claim, Plaintiff has stated a claim for damages based on lost profits as a result of losing the Negociants distributorship.

Less clear is whether Lauber intentionally procured the breach in the agreement between Plaintiff and Negociants. Lauber states that its actions in reporting to Negociants Plaintiff's alleged misconduct in selling Negociants wine outside of its own territory was proper, and not done for the purpose of procuring a breach in order to take over Plaintiff's territories. The facts which relate to this element of the claim have yet to be discovered and analyzed based on the above mentioned balancing test. However, for purposes of this motion to dismiss, the court is required to take the facts pled by Plaintiff as true. Those facts outline the actions of Lauber which, if true, infer that Lauber intentionally attempted, by improper means, to take over the entire New York State region for the sale of Negociants wine at Plaintiff's expense. Whether there is sufficient evidence to uphold such a claim will not be clear until discovery is concluded. Therefore, Lauber's motion to dismiss the claim for tortious interference with a contract should be DENIED.

**(b)** *Tortious interference with contractual relations*

The tort of interfering with prospective contractual relations has more demanding requirements for establishing liability than those required for existing contractual relationships. *Perry v. International Transport Workers' Federation,* 750 F.Supp. 1189, 1207 (S.D.N.Y.1990). In order to prevail on a claim of tortious interference with prospective contractual relations a plaintiff must establish that the defendant interfered with "business relations existing between plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper. *PPX Enterprises v. Audio Fidelity Enterprises,* 818 F.2d 266, 269 (2d Cir.1987); *Schmid, supra,* at 122. If the defendant's interference is intended, "at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *PPX Enterprises, supra,* at 269; *Schmid, supra,* at 122. The claim for tortious interference must be permitted to stand, even if a defendant's interference was intended to advance its own interests, if the means employed by the defendant were wrongful such as "physical violence, fraud or misrepresentation, civil suits and criminal

prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone. . . ." *Technology Consortium v. Digital Communications Associates, Inc.,* 757 F.Supp. 197, 200 (E.D.N.Y.1991).

■ In this case, Plaintiff has alleged that Lauber, as the sole distributor of Negociants wines in the New York region, interfered in the business relationship between Plaintiff and Negociants in exerting its economic power over Negociants by threatening to terminate its own relationship with Negociants. Plaintiff claims that Lauber had a strong influence over Negociants as the New York region, in which Lauber distributed the Negociants wine, "typically outsells the rest of the state." *See,* Amended Complaint, ¶ 44. Plaintiff further contends that Lauber's actions were intentional and made "in utter disregard of the rights of Plaintiff or done with actual malice." *See,* Amended Complaint, ¶ 48.

After reviewing the amended complaint in this action, the court concludes that, if the facts as alleged in the complaint are true, Lauber's conduct may be found to have constituted "some degree of economic pressure." *Technology Consortium, supra,* at 200. *See also, Perry, supra,* at 1201 ("if the interferer acts with a business (competitive) motive as well as with a malicious one, the conduct may be actionable when there is an existing contract"). As the court has previously found, for the purposes of this motion, that a contract did exist between Plaintiff and Negociants, the court finds that the complaint, as pled, alleges sufficient facts to withstand a motion to dismiss the claim for tortious interference with prospective contractual relations. Accordingly, Lauber's motion to dismiss should be DENIED.

### (c) *Unjust Enrichment*

■ Alternatively, Plaintiff asserts a cause of action against Lauber for unjust enrichment. Under New York law, the doctrine of unjust enrichment allows a plaintiff to recover money when it has been wrongfully acquired by a defendant and it is, under the circumstances, against good conscience to allow the defendant to keep the money. *Schmid, supra,* at 122. In order to state a

claim for unjust enrichment, a plaintiff must show that (1) defendant was enriched, (2) that such enrichment was at the expense of the plaintiff, and (3) that the circumstances were such that in equity and good conscience the defendant should make restitution. *Strapex Corp. v. Metaverpa N.V.,* 607 F.Supp. 1047, 1051 (S.D.N.Y.1985).

■ Plaintiff alleges in its amended complaint that Lauber conspired with Negociants to breach the contract between Negociants and Plaintiff in order to obtain Plaintiff's New York territories. Plaintiff contends that, as a result of Lauber's acts in wrongfully interfering with Plaintiff's contractual relations with Negociants, Lauber was unjustly enriched by virtue of the profits accruing to Lauber which, but for Lauber's activities, would have accrued to Plaintiff. Based on the facts as pled, for example, it is possible that Plaintiff may have developed a strong retail base in the disputed territories, only to have Lauber take over the fruits of its labors and receive the benefits to which Plaintiff would have been entitled. Lauber, however, argues that it never received any of Plaintiff's benefits, rather, it took over the distributorship only when Plaintiff, through its own actions, lost its contract with Negociants for the sale of Negociants products. However, Lauber's defenses to Plaintiff's claims are not sufficient to defeat Plaintiff's claim on a motion to dismiss. As Plaintiff has properly alleged all of the elements of a claim of unjust enrichment, Lauber's motion must fail. Accordingly, Lauber's motion to dismiss the claim for unjust enrichment should be DENIED.

### 3. *Punitive Damages*

■ Punitive damages are recoverable for an intentional tort. *International Minerals and Resources v. Pappas,* 761 F.Supp. 1068, 1079 (S.D.N.Y.1991). Under New York law, punitive damages may also be obtained where there is proof of "actual malice or ill will" or a "wrongful act done willfully, wantonly, or maliciously." *International Minerals and Resources, supra,* at 1079. As the court has denied Lauber's motion to dismiss the claim of tortious interference with a contract, the court concludes that Plaintiff's

punitive damage request should not be stricken. Therefore, Lauber's motion to dismiss the punitive damages claim should be DENIED.

### CONCLUSION

Based on the foregoing discussion, I recommend that Defendant Negociants' and Defendant Lauber's motions to dismiss the amended complaint be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for Plaintiff and Defendants.

SO ORDERED.