C.D. v City of New York (2025 NY Slip Op 25005)

[*1]

C.D. v City of New York

2025 NY Slip Op 25005

Decided on January 8, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 8, 2025
Supreme Court, New York County

C.D., Petitioner,

against
The City of New York, THE NEW YORK CITY HEALTH AND HOSPITAL CORPORATION, BELLEVUE HOSPITAL CENTER, Respondents.

Index No. 161524/2024

Leslie D. Kelmachter, Esq. and Sara Caitlin Ruff, Esq., Silver & Kelmachter, LLP for Petitioner C.D.
Philip Lamson Sutter, Esq. and Natalie Socorro, Esq., for Respondents New York City Health & Hospital Corporation and Bellevue Hospital
Joseph A. Varvara, Esq. for Non-Respondent New York City Police Department

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 7, 8, 9 were read on this motion for PRE-ACTION DISCOVERY & SEALING.
With the instant petition, Petitioner C.D. ("Petitioner"), as administrator of the estate of C.L. ("Decedent"), seeks an order compelling Respondents to preserve all materials relevant to the claims arising from the death of Decedent, including 911 recordings, Sprint reports, personal items, hospital surveillance footage, and other pertinent documentation. Additionally, Petitioner requests permission to proceed under a pseudonym and to seal this proceeding, citing the sensitive nature of the circumstances and the potential for undue harm to Decedent's surviving children should these matters become public. For the reasons set forth below, the court grants the request for preservation but denies the motion to proceed anonymously and under seal.
BACKGROUND AND PROCEDURAL HISTORY
On November 8, 2024, C.L. experienced a mental health crisis and was transported by an EMS ambulance to Bellevue Hospital. He was admitted and passed away less than 24 hours later on November 9, 2024. The petition alleges that Respondents departed from accepted medical standards, resulting in C.L.'s death. Petitioner, Decedent's widow and proposed administrator of [*2]his estate, asserts claims of medical malpractice and wrongful death.
The petition was accompanied by an order to show cause seeking the preservation of materials relevant to these claims and permission to proceed anonymously and under seal due to the sensitive nature of the allegations and concerns for Decedent's surviving children. [FN1]

Respondents New York City Health and Hospitals Corporation ("HHC") and Bellevue Hospital Center ("Bellevue")(collectively, "Respondents") oppose the motion, arguing that the preservation request is overly broad and the anonymity request lacks the required showing of good cause under CPLR § 3103(a) and 22 NYCRR § 216.1. Non-Respondent New York City Police Department ("NYPD"), which holds the 911 recordings and several other reports sought by Petitioner, also submitted opposition papers, contending that pre-action disclosure is unwarranted.
It is noted that Respondent City of New York did not formally oppose the motion, as the documents sought by Petitioner are held by Respondents and Non-Respondent NYPD (see NYPD's affirmation in partial opposition, NYSCEF Doc. No. 8.)

 ARGUMENTS
In support of the petition, Petitioner argues that preservation is essential to avoid spoliation of critical evidence, including 911 recordings, surveillance footage, and hospital records. Anonymity and sealing are sought to shield Decedent's family from public embarrassment and protect his minor child from harm. Petitioner cites Decedent's high-profile professional status and the sensitive nature of the case as justifications for sealing.
In opposition, Respondents HHC and Bellevue argue that the preservation request is overly broad, vague, and seeks materials not shown to be imminently at risk of destruction. They assert that many of the requested materials, such as internal investigative documents, are privileged under Education Law § 6527(3) and Public Health Law § 2805-l and § 2805-m. Respondents further contend that Petitioner's requests for anonymity and sealing lack the requisite showing of compelling circumstances, emphasizing that embarrassment and privacy concerns are insufficient grounds for sealing court records.
Additionally, NYPD argues that Petitioner's request for pre-action discovery fails to meet the standard set forth in CPLR § 3102(c). Specifically, NYPD contends that the information sought—911 recordings and related dispatch materials—is not necessary for Petitioner to frame a cause of action or file a notice of claim. NYPD emphasizes that these records are preserved for a limited time in the normal course of business, and no exigent circumstances justify their immediate disclosure. NYPD further argues that pre-action discovery cannot be used as a fishing expedition to determine whether a cause of action exists.

DISCUSSION
A. Pre-Action Discovery
Under CPLR § 3102(c), pre-action discovery may be granted to preserve evidence material to a future claim. Courts have consistently emphasized the critical need to prevent the destruction of evidence when such loss would prejudice a party's ability to prosecute or defend a claim ( Holzman v. Manhattan & Bronx Surface Transit Operating Auth., 271 AD2d 346 [1st [*3]Dept 2000]). However, the scope of pre-action discovery must be narrowly tailored to avoid becoming a speculative endeavor ( Matter of Bishop v. Stevenson Commons Assoc., L.P., 74 AD3d 640 [1st Dept 2010]; Matter of White v. New York City Tr. Auth., 198 AD3d 557 [1st Dept 2021]).
In this case, Petitioner's request to preserve 911 recordings and related materials is well-grounded. These records are essential to understanding the sequence of events leading to Decedent's hospitalization and death, and their limited retention period underscores the urgency of preservation ( People v. Hyde, 172 AD2d 305 [1st Dept 1991]; People v. Waters, 268 AD2d 244 [1st Dept 2000]). Similarly, the preservation of hospital surveillance footage, personal items, [FN2]
and other materials directly related to Decedent's care is warranted. These items are central to claims of medical malpractice and wrongful death and serve as vital evidence in the forthcoming litigation.
Nonetheless, the court concurs with Respondents' argument that Petitioner's request to inspect these materials at this stage is premature. As Respondents HHC and Bellevue correctly note, certain materials may be shielded by statutory privileges, such as those under Education Law § 6527(3) and Public Health Law § 2805-l and § 2805-m ( Katherine F. v. State of New York, 94 NY2d 200 [1999]). This includes internal hospital investigative reports, which are explicitly protected from disclosure. The court finds that these privilege issues must be resolved through appropriate discovery channels once the action has been commenced.
The court further acknowledges the NYPD's position that pre-action discovery under CPLR § 3102(c) cannot be used as a fishing expedition to determine whether a cause of action exists ( Liberty Imports, Inc. v. Bourguet, 146 AD2d 536 [1st Dept 1989]; Emmrich v. Tech. for Info. Mgmt., Inc., 91 AD2d 777 [3d Dept 1982]). While the NYPD's obligation to preserve materials is affirmed, disclosure will be addressed through proper litigation procedures, ensuring adherence to confidentiality standards and avoiding undue burden on municipal entities.
Thus, the preservation order is limited to safeguarding the evidence without permitting immediate access or inspection.
B. Pseudonym and Sealing
New York law strongly presumes that court proceedings should be open to the public, reflecting a fundamental principle of judicial transparency and accountability. As the Appellate Division, First Department, articulated in Mosallem v. Berenson, 76 AD3d 345, 349 (1st Dept 2010), "Confidentiality is clearly the exception, not the rule, and the party seeking to seal court records has the burden to demonstrate compelling circumstances." This presumption ensures that the judicial process is conducted fairly and efficiently, while fostering public trust in the legal system.
Petitioner's request for anonymity and sealing is predicated on concerns about public embarrassment and potential harm to Decedent's surviving children. While the court is deeply sympathetic to the family's loss, such sympathy cannot supplant the rigorous legal standards required to justify sealing or anonymity. Under Twersky v. Yeshiva Univ., 201 AD3d 559 (1st Dept 2022), a plaintiff seeking to proceed under a pseudonym must establish that their privacy [*4]interest outweighs the presumption of openness and that disclosure will result in specific, identifiable harm. Petitioner has not satisfied this burden.
The sensitive nature of the allegations, coupled with Decedent's professional status, does not constitute "compelling circumstances" under prevailing case law. Courts have consistently held that embarrassment, damage to reputation, or general privacy concerns are insufficient to warrant sealing court records ( Anonymous v. Lerner, 124 AD3d 487 [1st Dept 2015]; Spearing v. Linmar, L.P., 2015 NY Slip Op 31796[U] [Sup Ct, NY County 2015]). The claim that anonymity is necessary to shield the children from ridicule by classmates is speculative and unsubstantiated. Moreover, as potential deponents during the forthcoming litigation, Decedent's children are obligated to testify truthfully under oath, irrespective of whether the proceedings are sealed.
This case is distinguishable from actions involving allegations of sexual abuse or highly stigmatizing conduct, where courts have permitted anonymity to protect vulnerable parties ( Doe v. Bloomberg L.P., 200 AD3d 410 [1st Dept 2021]; HCVAWCR-Doe v. Roman Catholic Archdiocese of NY, 2020 NY Slip Op 50966[U] [Sup Ct, Westchester County 2020]). The allegations here—medical malpractice and wrongful death—do not carry the same societal stigma that would justify shielding Petitioner's identity and sealing the case file.
Furthermore, Petitioner's argument that anonymity will encourage candor from Decedent's children is unpersuasive. As noted, the obligation to testify truthfully under oath exists regardless of whether proceedings are public or private. Speculative claims about potential harm or embarrassment cannot override the public's right to access judicial proceedings (Matter of Benkert v. Smithers, 288 AD2d 147 [1st Dept 2001]).
Petitioner's subjective proposition—that Decedent's potential act of self-harm should be shielded and sealed to spare the sensitivities of his surviving children—rests on no discernible foundation within the framework of existing legal precedent. Rather, it reflects a normative judgment, rooted in personal sentiment, as to what a court ought to permit. Such a view, untethered to the rule of law, is inherently malleable, subject to fluctuation depending on the identities, circumstances, or sensibilities of the parties before the court.
This is precisely why the judiciary eschews reliance on subjective, individualized assessments. Justice demands constancy—an unyielding adherence to enduring legal standards that transcend the particularities of the litigants and the caprices of public opinion. To allow otherwise would risk eroding the very bedrock of equality under the law, substituting impartial adjudication with the uncertainty of personal attitudes. It is this steadfast commitment to impartiality that ensures justice is not only done but is seen to be done, without regard to the divergent positions or stations of those who seek it. To be sure, "[t]he ladder of law has no top and no bottom" (Bob Dylan, "The Lonesome Death of Hattie Carroll," on The Times They Are-A Changin' [Columbia Records 1964]).
The judiciary has long resisted such subjective evaluations precisely to uphold the principle of enduring and impartial standards. Courts are not arbiters of individualized sensibilities but are instead tasked with ensuring that justice is administered evenly and consistently, irrespective of the differing opinions, social positions, or emotional responses of those appearing before them. This commitment to equality under the law is the cornerstone of a fair and impartial judicial system. This is precisely why the speculative reactions of Decedent's surviving children can neither compel nor permit this court to disregard the foundational principle of openness in judicial proceedings, save for the rarest of circumstances.
In sum, while the court acknowledges the difficult circumstances faced by Decedent's family, these considerations do not meet the exacting standard for granting anonymity and sealing. Openness in judicial proceedings remains a cornerstone of our legal system, ensuring accountability and fostering public confidence in the judiciary.
Accordingly, it is:
ORDERED and ADJUDGED that Petitioner's motion to preserve all materials related to Decedent's hospitalization and death is GRANTED to the extent that Respondents and Non-Respondent NYPD shall maintain and preserve such materials, subject to any applicable legal protections; and it is further
ORDERED and ADJUDGED that Petitioner's motion to proceed under a pseudonym and seal this proceeding, and any forthcoming litigation, is DENIED.
This constitutes the decision, order, and judgment of the court.
DATE 1/8/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Notably, two of Decedent's surviving children are adults, and a third child is fourteen years old.

Footnote 2:At oral argument, Respondents informed the court that Decedent's personal items had already been returned to Petitioner, thereby rendering that portion of Petitioner's request moot.