■ In the Matter of AARON GLEICH, Respondent, v C. SAMUEL KISSINGER, Appellant. — Order, Supreme Court, New York County (Andrew R. Tyler, J.), entered January 15, 1985, which granted petitioner's motion under CPLR 3102 (c) to have respondent-appellant appear for a preaction deposition and denied respondent-appellant's cross motion to deny petitioner's application, unanimously reversed, on the law and in the exercise of discretion, with costs, to deny petitioner's motion and grant respondent-appellant's cross motion.

Petitioner Aaron Gleich is a real estate developer who in 1980 proposed a major urban renewal project to officials of the City of New Rochelle. For the next two years he assembled a development team (architects, contractors, economic consultants) to work out the details of the proposed project. On May 18, 1982, Gleich was designated by the City Council in a unanimous resolution as the "qualified and eligible sponsor" of the project upon the express understanding that the designation conferred no contractual right on him unless he and the city executed a formal contract of sale for the subject property within one year.

Over the next two years, planning for the project did not go smoothly. At a City Council meeting on April 18, 1984 it was revealed that a Department of Housing and Urban Development (HUD) official found the project to be "unfeasible; it was too complexly constructed; and the rents were absolutely unacceptable: he would not approve the project as constructed at this point." One Council member said of the project: " 'It is a tornado proposal — a lot of wind and very little rain.' Every time you turn around there is something that does not set right; and at the very last minute there is a letter [submitted by Gleich to the City Council that evening] that says little. The time has run out; I am in favor of the concept; and I would prefer to have you come back to us again after working on this so that the next time it will be a 'hurricane proposal.' " The Council voted 4 to 1 to rescind the May 18 resolution and to terminate Gleich's designation as sponsor for the property.

Some time thereafter, the record is not clear, HUD allegedly reversed its position and the Mayor of New Rochelle thereupon called a special meeting of the Council, to be held July 31, 1984, to consider redesignating Gleich as the developer of the project. Prior to that meeting, on July 18, a lengthy conference had been held between Gleich, his attorney and the Council to try to resolve Council concerns regarding the project. The minutes of that meeting reveal that most of the Council members were critical of the progress of the project and dissatisfied with Gleich's responses to their questions and concerns.

On the morning of July 31 radio station WVOX broadcast a news report concerning the Council meeting to be held that evening, including this statement: "Meanwhile, WVOX has learned that Gleich has lost a powerful ally when [New Rochelle] City Manager Sam Kissinger bailed out. The word around City Hall is that Kissinger is hopping mad at Gleich's lack of candor. Kissinger is even known to believe that Gleich may have lied to him." At the Council meeting that evening, a motion to redesignate Gleich as project developer failed for lack of a second.

On October 10, 1984 Gleich brought a motion in Supreme Court for an order pursuant to CPLR 3102 (c) and 3107 directing respondent C. Samuel Kissinger to appear for an oral deposition to aid in bringing an action against Kissinger for slander. Kissinger cross-moved to dismiss the application. We have concluded that the underlying facts in this case do not warrant the preaction disclosure sought by Gleich and granted by Special Term. The reason advanced by Gleich for seeking preaction disclosure is the strict requirement in New York State courts (but not Federal courts — *Korry v International Tel. & Tel. Corp.,* 444 F Supp 193 [SDNY 1978]) that the complaint in a libel or slander action set forth the particular defamatory words claimed to be uttered by defendant. (CPLR 3016 [a]; *Geddes v Princess Props. Intl.,* 88 AD2d 835; *Laiken v American Bank & Trust Co.,* 34 AD2d 514; *Gardner v Alexander Rent-A-Car,* 28 AD2d 667.) Gleich would also be required to set forth in his complaint the time, manner and persons to whom the publication was made. (*Geddes v Princess Props. Intl., supra.*)

The factors to be considered in determining an application for preaction disclosure were well summarized by the Appellate division, Third Department in *Emmrich v Technology for Information Mgt.* (91 AD2d 777) as follows: "Disclosure to aid in bringing an action, under CPLR 3102 (subd [c]), is granted only where the party seeking the disclosure has shown in his affidavits facts which 'fairly indicate he has some cause of action against the adverse party' and, further, that the information he seeks is 'material and necessary' to that actionable wrong (*Stewart v Socony Vacuum Oil Co.,* 3 AD2d 582, 583). Preaction disclosure is not allowed to determine whether facts supporting a cause of action exist (*Matter of Manufacturers & Traders Trust Co. v Bonner,* 84 AD2d 678; *L-Tron Corp. v Davco Systems,* 60 AD2d 25, 29), and mere conclusory statements of suspicion and conjecture are insufficient to allow one 'a judicial franchise to penetrate into another party's affairs, either by examination or inspection, to find out whether he ought to sue or ought not to

sue' (*Stewart v Socony Vacuum Oil Co., supra,* p 583; see, also, 3A Weinstein-Korn-Miller, NY Civ Prac, par 3102.14)." (*See also, Kenerson v Davis,* 278 App Div 482, 485: "A plaintiff seeking an examination of a defendant to frame a complaint must show his case has merit.") We find that Gleich has failed to satisfy this burden.

Our analysis begins with an evaluation of the views allegedly communicated by Kissinger, which presumably formed the basis of the radio report. In the absence of special circumstances, which are not presented here, it would be difficult to conclude that "lack of candor" is the type of accusation that will support an action for defamation. As to the possibility that Kissinger may have expressed to someone a belief "that Gleich *may have* lied to him", this court had the occasion to evaluate a somewhat analogous accusation alleged in a complaint to be slanderous: " '[h]e is no good as a lawyer' "; " '[h]e is not handling [a legal matter] right' "; " '[h]e is not putting * * * much effort into it' " (*Beinin v Berk,* 88 AD2d 884). We noted: "The statements were made in a particular context * * * They do not charge professional incompetence, but merely that plaintiff had not properly conducted a particular transaction. At worst, they are no more than expressions of opinion [citations omitted]". (*Beinin v Berk, supra, affd for reasons stated* 58 NY2d 660.)

We observe that the statements attributed to Kissinger would be protected by an absolute privilege if made during the course of his duties as City Manager. (*Clark v McGee,* 49 NY2d 613; *Duffy v Kipers,* 26 AD2d 127.) Even if the statements were not absolutely privileged, they would be protected by a qualified privilege on the ground that the statements were " 'fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.' " (*Toker v Pollak,* 44 NY2d 211, 219; see, *Kasachkoff v City of New York,* 107 AD2d 130, 134.) Gleich does not suggest that Kissinger was motivated by malice, ill will or personal spite necessary to overcome a qualified privilege. (*Shapiro v Health Ins. Plan,* 7 NY2d 56; *Kasachkoff v City of New York, supra,* at p 135.)

In the light of these principles we conclude that Gleich has failed to present facts that fairly indicate he has a meritorious cause of action, and his application for preaction disclosure under CPLR 3102 (c) should, accordingly, have been denied. One who seeks to persuade the members of a governmental unit that he should be placed in charge of a $220 million urban renewal project cannot reasonably expect that in the course of open debate about his qualifications or performance nothing adverse

will be said about him by any governmental officer who has a legitimate interest in the matter. Nor should any governmental officer have to suffer the chilling effect of a possible defamation action when performing his duty to candidly express his evaluation of a person seeking such approval under circumstances equivalent to those here presented. "The extent to which disclosure before suit should be permitted is left to the court's discretion". (*Matter of Urban v Hooker Chem. & Plastics Corp.,* 75 AD2d 720; 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3102.07.) We now exercise that discretion to deny Gleich's application upon the legal principles and our societal interest in freedom of speech discussed above. Concur — Murphy, P. J., Sandler, Asch, Fein and Milonas, JJ.