OPINION OF THE COURT
Edwina G. Richardson-Mendelson, J.
The petitioner, the Administration for Children’s Services (hereinafter ACS), moves this court under this “Z” docket for an order requiring the production of psychological, psychiatric and medical records of the respondent. No petition alleging child neglect or abuse has been filed. The respondent is the mother of subject child Daniel C. Daniel C. was born in March 2007 according to the intake report of the Office of Children and Family Services. The child’s father, Samuel C., is not a respondent.
According to memorandum of law submitted to the court by ACS, the respondent, on June 24, 2007, had an argument with the staff of a homeless shelter in which she was residing. The argument centered on the shelter’s refusal to permit the nonrespondent father to stay at the shelter with the respondent mother and the child. The respondent claims that the argument caused her to have a seizure and she was taken by ambulance to Lincoln Hospital in the Bronx, where she was admitted. The respondent has a history of seizure disorder. On the same day, a social worker at Lincoln Hospital submitted a report to the New York Statewide Central Register of Child Abuse and Maltreatment alleging that the child and his father, prior to the respondent mother’s hospitalization, were homeless and sleeping on trains and outdoors. The report also alleged that the respondent mother “had no plans for where the non-respondent father and the subject child were to stay while respondent-mother was hospitalized.”
On June 24, 2007, the day she was admitted to the hospital, the respondent mother reportedly contacted the maternal grandmother to ascertain whether the maternal grandmother would be willing to care for the child until the respondent mother was released from the hospital. On the same day, the respondent mother placed the child in the care of a maternal aunt and maternal great-aunt.
Also on June 24, 2007, while still medically unstable, the respondent mother signed herself out of Lincoln Hospital. Accord *328 ing to ACS, the respondent mother’s treating physician recommended additional tests and did not recommend that the respondent mother leave the hospital when she did. On the next day, June 25, 2007, the respondent mother admitted herself to New York Presbyterian Hospital for treatment of seizure disorder. She was released the following day and, at an unstated date, she and the nonrespondent father were placed by “PATH-EAU” at an adult shelter.
On or about June 28, 2007, the nonrespondent father filed a motion in Bronx Family Court under Family Court Act § 1028 seeking the return of the child. The motion was granted on June 28, 2007. The memoranda received by the court from ACS and the respondent do not indicate why a motion under section 1028 was necessary in a circumstance in which ACS apparently never removed the child from the family’s care.
On or about July 6, 2007, the respondent mother and the child were placed by “PATH-EAU” in a shelter in Jamaica, New York. On the same date, the respondent mother stated that she was diagnosed with postpartum depression after the birth of the subject child. The respondent mother also told a case worker that “she had not been compliant with taking her prescription medication in April 2007, which resulted in two episodes of seizures in June 2007.”*
The petitioner’s affirmation states that the petitioner asked the respondent to sign the Health Insurance Portability and Accountability Act of 1996 (HIPAA)-compliant authorizations for the release to the petitioner of the information sought but the respondent refused.
Discussion
No neglect or abuse petition has been filed in this matter. CPLR 3102 (c) provides that, before an action is commenced, disclosure to aid in bringing an action, to preserve information, or to aid in arbitration may be obtained but only by court order. Family Court Act § 1038 (d) makes CPLR 3102 (c) applicable to Family Court article 10 proceedings.
The cases hold fairly clearly that an order permitting preaction disclosure is appropriate only where the applicant for the order can show facts demonstrating that a cause of action exists and that the information sought is material and necessary. (See 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 3102.07, at 31-208 [2d ed], citing Matter of Singh [MABSTOA], 149 Misc 2d 365 [Civ *329 Ct, NY County 1990]; and ¶ 3102.14, at 31-216, citing Matter of Gleich v Kissinger, 111 AD2d 130 [1st Dept 1985].) At least one case requires that a “meritorious” cause of action be demonstrated. (See 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 3102.14, at 31-216 [2d ed], citing Liberty Imports v Bourguet, 146 AD2d 535 [1st Dept 1989]; see also Stewart v Socony Vacuum Oil Co., 3 AD2d 582 [3d Dept 1957].)
CPLR 3102 (c) may not be used to determine whether the petitioner has a cause of action. (See 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 3102.14, at 31-218 [2d ed], citing Matter of Stewart v New York City Tr. Auth., 112 AD2d 939 [2d Dept 1985]; Matter of Manufacturers & Traders Trust Co. v Bonner, 84 AD2d 678 [4th Dept 1981]; Hill v Springer, 132 Misc 2d 1012 [Sup Ct, NY County 1986]; Matter of Pelley, 43 Misc 2d 1082 [Nassau County Ct 1964]; and Matter of Heller v State of New York, 57 Misc 2d 976 [Ct Cl 1968].)
It is for this court to determine whether ACS has stated facts demonstrating that a cause of action exists and, if so, whether the information sought is material and necessary to the prosecution of the action.
The facts alleged by ACS which are offered in an attempt to make out a cause of action in neglect are that the respondent failed, in April 2007, to take medication prescribed for her seizure disorder, that she suffered from postpartum depression after the birth of the child in March 2007, that she last visited her therapist in April 2006, that she and the child were sleeping in trains and outside a shelter prior to her hospitalization on June 24, 2007, and that the respondent had no plans as to where the child and the nonrespondent father were to sleep while the respondent was hospitalized.
The facts alleged by ACS also include some which tend to exculpate the respondent, including the allegation that on the day the respondent was taken on an emergency basis to Lincoln Hospital, she called her mother to ascertain whether her mother would be willing to care for the child until the respondent was released from the hospital and that, on the same day, the respondent placed the child in the care of a maternal aunt and maternal great-aunt. These actions by the respondent appear to be entirely appropriate in the circumstances. Although ACS alleges that the respondent signed herself out of Lincoln Hospital before her physician recommended release, it is also alleged that she admitted herself to New York Presbyterian Hospital the next day for treatment of seizure disorder.
*330 The allegation that the respondent was not compliant with taking her seizure medication in April 2007 is not made with great detail. Nothing is stated about the length of time the respondent went without her seizure medication or about the reason the respondent went off her medication. It is therefore difficult to find that this allegation forms the basis for a cause of action in neglect.
The allegation that the respondent suffered from postpartum depression after the birth of the child in March 2007 does not in itself make out a cause of action in neglect, but even taken together with the allegation that she last visited her therapist (who is presumed to be a psychotherapist and the visits presumed to be for psychotherapeutic purposes and not social) in April 2006 — almost one year before the birth of the child— these allegations do not make out a cause of action in neglect. To make out a cause of action in neglect, there would have to be an allegation that the respondent somehow knew before the child was born that she would be unable to care for the child unless she continued psychotherapy.
The allegation that the respondent had no plans as to where the child and the nonrespondent father were to sleep while the respondent was hospitalized cannot make out a cause of action in neglect. The respondent is entitled to reasonably rely on the nonrespondent father to care for the child in a circumstance such as the mother’s emergency hospitalization. Where the mother is hospitalized on an emergency basis and the father is available to care for the child, it would be unreasonable to find the mother neglectful if she fails to make sleeping arrangements for the family on the night of her admission to the hospital.
Finally, the allegation that the respondent and the child were sleeping in trains and outside a shelter prior to her hospitalization on June 24, 2007 comes the closest of all the allegations to making out a cause of action in neglect. But this allegation is not well-detailed and does not indicate the number of days the child was without adequate shelter, or what time of year the child was sleeping outdoors, or whether the child was at risk of harm.
An overarching concern of the court is the statement in ACS’s memorandum (at 7) that “[i]n order for ACS to properly investigate the allegations in the report and determine whether there is some credible evidence that any of the allegations are true, it is vital that the respondent mother’s psychological/ *331 psychiatric records and medical records be provided immediately.” This statement plainly admits that ACS does not yet have any credible evidence that these allegations are true. Presumably, this is why a child abuse or child neglect petition has not been filed. Therefore, ACS’s request for disclosure of psychiatric, psychological, or medical records would be for the purpose of determining whether a cause of action exists, which is a purpose prohibited under Matter of Stewart v New York City Tr. Auth., Matter of Manufacturers & Traders Trust Co. v Bonner, Hill v Springer, Matter of Pelley and Matter of Heller, referenced above.
No harm has come to this child. The respondent acted appropriately by giving the child to the maternal aunt and maternal great-aunt when she was admitted to Lincoln Hospital. The child is now being cared for by his father. No allegation has been made that the respondent is incapable, due to a psychiatric, psychological or medical condition, of caring for the child. No allegation has given this court reason to believe that the child’s physical, mental, or emotional condition is in imminent danger of becoming impaired.
In addition, the release of medical records is governed by HIPAA (45 CFR parts 160, 164) which permits such records to be released under a court order. The release of psychiatric and psychological records is also governed by Mental Hygiene Law § 33.13 which permits release of such records only upon a finding that the interests of justice significantly outweigh the need for confidentiality. In this instance, where the court finds that a cause of action has not been stated, the interest of justice in determining whether an act of child neglect has occurred is so limited that it does not outweigh the need for confidentiality.
The court finds that ACS has not stated a cause of action that would entitle it to prepetition disclosure, that any prepetition disclosure of psychiatric, psychological, or medical records would be for the improper purpose of determining whether a cause of action exists, and that the interest of justice in determining whether child neglect has occurred does not outweigh the need for confidentiality of the respondent’s psychiatric, psychological, or medical records.
The motion is denied.
[Portions of opinion omitted for purposes of publication.]

ACS mem of law, para 12.